OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY V. MARILLA L. CROW, ADMINISTRATRIX.

FILED FEBRUARY 4, 1896. No. 6054.

1. **Carriers: SHIPPERS OF LIVE STOCK: PASSES: PERSONAL INJURIES.** A shipper of cattle, who, for the purpose of enabling him to care for his stock in transit, receives a drover's pass, is not, while accompanying his stock, entitled to all the rights and privileges of an ordinary passenger for hire, and an instruction to the contrary effect was erroneous.

2. ———: ———: ———. One who ships cattle and undertakes, upon a pass given him for that purpose, to accom-

pany and care for his stock in transit does so under the implied conditions that he will submit to whatever inconveniences are necessarily incident to his undertaking.

3. ———: ———: ———: NEGLIGENCE. In an action for damages from injuries inflicted by an engine upon a shipper of live stock, who was accompanying and caring for such stock under the arrangement above indicated, the question of the existence of negligence, such as would give rise to a cause of action, or of such contributory negligence as would defeat it, is one of fact to be determined by the jury.

ERROR from the district court of Valley county. Tried below before THOMPSON, J.

The opinion contains a statement of the case.

*John M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error:

Under the evidence there was no breach of legal duty by defendant below towards plaintiff's intestate, and the injury from which he died was caused by his own negligence proximately contributing thereto. It was error to refuse to direct a verdict for defendant. (*Omaha Horse R. Co. v. Doolittle,* 7 Neb., 481; *City of Lincoln v. Gillilan,* 18 Neb., 114; *Missouri P. R. Co. v. Moseley,* 57 Fed. Rep., 922; *Burns v. Boston & L. R. Co.,* 101 Mass., 50; *Clark v. Boston & A. R. Co.,* 128 Mass., 1; *Allyn v. Boston & A. R. Co.,* 105 Mass., 77; *Pennsylvania R. Co. v. Rathgeb,* 32 O. St., 66; *Anderson v. Chicago, B. & Q. R. Co.,* 35 Neb., 95; *Durrell v. Johnson,* 31 Neb., 796; *Chicago, B. & Q. R. Co. v. Barnard,* 32 Neb., 317.)

There was error in the fifth instruction given by the court. (Wood, Railway Law, p. 1075; *Shoemaker v. Kingsbury,* 12 Wall. [U. S.], 376; *Hazard v. Chicago, B. & Q. R. Co.,* 1 Biss. [U. S.], 503.)

At the time of the death of deceased the com-

pany owed him no duty as a passenger. Negligence on part of defendant below in violation of its general duty to the public was not shown, and the company should not be held liable. (*Chicago, B. & Q. R. Co. v. Grablin*, 38 Neb., 90; *State v. Grand Trunk R. Co.*, 58 Me., 176; *Baltimore & P. R. Co. v. Jones*, 95 U. S., 439; *Atchison & N. R. Co. v. Loree*, 4 Neb., 446; *Omaha & R. V. R. Co. v. Clark*, 35 Neb., 867; *Omaha & R. V. R. Co. v. Brady*, 39 Neb., 27; *Hyde v. Missouri P. R. Co.*, 110 Mo., 272; *Louisville & N. R. Co. v. Melton*, 2 Lea [Tenn.], 262.)

References to the question of contributory negligence: *Chicago, R. I. & P. R. Co. v. Houston*, 95 U. S., 697; *Omaha & R. V. R. Co. v. Martin*, 14 Neb., 295; *Schmolze v. Chicago, M. & St. P. R. Co.*, 83 Wis., 659; *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 657; *Baltimore & P. R. Co. v. Jones*, 95 U. S., 439; *Tuttle v. Detroit, G. H. & M. R. Co.*, 122 U. S., 195; *Myers v. Baltimore & O. R. Co.*, 150 Pa. St., 386; *Artz v. Chicago, R. I. & P. R. Co.*, 34 Ia., 153; *Pleasants v. Fant*, 89 U. S., 121; *O'Donnell v. Missouri P. R. Co.*, 7 Mo. App., 190.

A drover in charge of live stock travels under restrictions not applicable to ordinary passengers. His contract to care for the stock limits the liability of the carrier, and he assumes the risk ordinarily incident to such employment. (2 Am. & Eng. Ency. Law, 743, note 8; *Dunn v. Hannibal & St. J. R. Co.*, 68 Mo., 268; *Cragin v. New York C. R. Co.*, 51 N. Y., 61; Hutchinson, Carriers [2d ed.], sec. 322; *Toledo, W. & W. R. Co. v. Black*, 88 Ill., 112; *Connelly v. Eldridge*, 36 N. E. Rep. [Mass.], 469; *Degg v. Midland R. Co.*, 2 H. & N. [Eng.], 773[*]; *Althorf v. Wolfe*, 22 N. Y., 355; *Mayton v. Texas & P. R. Co.*, 63 Tex., 77; *Wright v. London & N. W. R. Co.*, 1 Q. B. Div. [Eng.], 252; *Plant v. Grand Trunk R. Co.*,

27 Q. B. [U. C.], 78; *Searle v. Lindsay*, 11 C. B., n. s. [Eng.], 429; *Gibson v. Erie R.Co.*, 63 N. Y., 449; *Farwell v. Boston & W. R. Co.*, 4 Met. [Mass.], 49; *Baltimore & O. R. Co. v. Baugh*, 149 U. S., 368; *Brown v. Winona & St. P. R. Co.*, 27 Minn., 162; *Randall v. Baltimore & O. R. Co.*, 109 U. S., 478; *Wilson v. Winona & St. P. R. Co.*, 37 Minn., 326.)

A drover in charge of live stock who uses a pass issued upon the condition that he will bear all the risks of transportation cannot maintain an action for personal injury received by the negligence of the carrier's servants. (*Gallin v. London & N. W. R. Co.*, 10 L. R., Q. B. [Eng], 212; *Alexander v. Toronto & N. R. Co.*, 35 Q. B. [U. C.], 453; *Wells v. New York C. R. Co.*, 24 N. Y., 181; *Perkins v. New York C. R. Co.*, 24 N. Y., 196; *Bissell v. New York C. R. Co.*, 25 N. Y., 442; *Poucher v. New York C. R. Co.*, 49 N. Y., 263; *Annas v. Milwaukee & N. R. Co.*, 67 Wis., 46.)

The contract by which a party assumes the risk of injuries from the negligence of servants to another, indorsed on a free pass, issued without other consideration than that expressed in the written instrument, is not against public policy, and is binding on the person accepting and agreeing to the same, in the absence of willful or gross negligence on part of the carrier or its employes. (*Wescott v. Fargo*, 61 N. Y., 542; *Dorr v. New Jersey Steam Navigation Co.*, 11 N. Y., 485; *Arnold v. Illinois C. R. Co.*, 83 Ill., 273; *Toledo, W. & W. R. Co. v. Beggs*, 85 Ill., 80; *Western & A. R. Co. v. Bishop*, 50 Ga., 465; *McCawley v. Furness R. Co.*, 8 L. R., Q. B. [Eng.], 57; *Hall v. North Eastern R. Co.*, 10 L. R., Q. B. [Eng.], 437; *Duff v. Great Northern R. Co.*, 4 L. R. [Ir.], 178; *Alexander v. Wilmington & R. R. Co.*, 3 Strob. Law

[S. Car.], 594; *Smith v. New York C. R. Co.*, 24 N. Y., 222; *Magnin v. Dinsmore*, 56 N. Y., 168; *Kinney v. Central R. Co.*, 32 N. J. Law, 407; *Griswold v. New York & N. E. R. Co.*, 53 Conn., 371; *Baltimore & O. R. Co. v. Skeels*, 3 W. Va., 556.)

*Reese & Gilkeson, contra:*

Deceased was a passenger and entitled to all the rights and protection of a passenger for hire at the time he was killed, and the release upon the back of the ticket was void and of no effect. (*New York C. R. Co. v. Lockwood*, 17 Wall. [U. S.], 357; *Steamboat New World v. King*, 16 How. [U. S.], 469; *Philadelphia & R. R. Co. v. Derby*, 14 How. [U. S.], 485; *Missouri P. R. Co. v. Ivey*, 9 S. W. Rep. [Tex.], 346; *Receivers International & G. N. R. Co. v. Armstrong*, 23 S. W. Rep. [Tex.], 236; *Pennsylvania R. Co. v. Henderson*, 51 Pa. St., 315; *Little Rock & F. S. R. Co. v. Miles*, 40 Ark., 298; *Carroll v. Missouri P. R. Co.*, 88 Mo., 239; *Ohio & M. R. Co. v. Selby*, 47 Ind., 471; *Flinn v. Philadelphia, W. & B. R. Co.*, 1 Hous. [Del.], 471; *Indianapolis, B. & W. R. Co. v. Beaver*, 41 Ind., 493; *Wilton v. Middlesex R. Co.*, 125 Mass., 130; *Siegrist v. Arnot*, 10 Mo. App., 197; *Jacobs v. St. Paul & C. R. Co.*, 20 Minn., 125; *Washburn v. Nashville & C. R. Co.*, 3 Head [Tenn.], 638; *Delaware L. & W. R. Co. v. Ashley*, 67 Fed. Rep., 209; *Rose v. Des Moines V. R. Co.*, 39 Ia., 246; *McLean v. Burlank*, 11 Minn., 288; *Cleveland, P. & A. R. Co. v. Curran*, 19 O. St., 1; *Missouri P. R. Co. v. Vandeventer*, 26 Neb., 222; *St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb., 463.)

A person, standing in the proper place, under the circumstances, upon the premises of a railroad company, awaiting an opportunity to board his train, is still ι passenger, and the railroad com-

pany is bound to use the same care and caution as to his safety, and is under the same obligation to him as if he were in the car in which he is to be transported. (*Warren v. Fitchburg R. Co.*, 8 Allen [Mass.], 227; *Peniston v. Chicago, St. L. & N. O. R. Co.*, 34 La. Ann., 777; *Dodge v. Boston & Bangor Steamship Co.*, 148 Mass., 207; *Parsons v. New York C. & H. R. R. Co.*, 113 N. Y., 355; *Jeffersonville, M. & I. R. Co. v. Riley*, 39 Ind., 568; *Dice v. Willamette Transportation Co.*, 8 Ore., 60; *Gordon v. Grand Street & N. R. Co.*, 40 Barb. [N. Y.], 546; *Caswell v. Boston & W. R. Co.*, 98 Mass., 194; *Central R. Co. v. Perry*, 58 Ga., 461.)

The question of negligence was for the jury to determine from the evidence. (*Chicago, B. & Q. R. Co. v. Oleson*, 40 Neb., 889; *Omaha & R. V. R. Co. v. Morgan*, 40 Neb., 604; *Chicago, B. & Q. R. Co. v. Wilgus*, 40 Neb., 660; *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642; *Spellman v. Lincoln Rapid Transit Co.*, 36 Neb., 890; *Missouri P. R. Co. v. Baier*, 37 Neb., 235; *Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143; *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb., 448.)

*Charles A. Munn*, also for defendant in error.

RYAN, C.

In the district court of Valley county there was recovered a verdict in the sum of $5,000, upon which judgment was rendered in favor of the defendant in error. In describing the pleadings and the proceedings in the district court, it will probably avoid confusion to designate the parties according to their relation to the suit in that court, rather than as each is plaintiff in error, or defendant in error, in this court.

The plaintiff, Marilla L. Crow, in her petition

alleged that she was the administratrix of the
estate of Jonathan S. Crow, deceased; that the de-
fendant was a common carrier of freight and pas-
sengers over a line of railroad between Ord and
South Omaha, which it owned; that on March 3,
1892, the said defendant, in consideration of the
receipt by it of $126, paid by Jonathan S. Crow,
undertook to ship three car loads of cattle and
safely carry said Jonathan S. Crow from Ord to
South Omaha, but that while said Jonathan S.
Crow was being carried in pursuance of said under-
taking, and while he was performing his duty in
looking after and taking care of said cattle while
they were being transported to South Omaha, the
said defendant negligently and carelessly ran an
engine against, upon, and over said Jonathan S.
Crow, and thereby caused his death.    There were
described in the petition eight children of said de-
cedent, who survived him, and it was alleged that
these survivors and the widow of Jonathan S.
Crow had sustained damages by his death in the
sum of $5,000, for which sum judgment was prayed.
The answer was in denial of all the averments of
the petition.    At the commencement of the trial it
was admitted in open court that the plaintiff was
the duly qualified administratrix of the estate of
Jonathan S. Crow; that said decedent left him sur-
viving the widow and children described in the
petition; that said widow and surviving children,
at the time of said trial, were the heirs at law of
said Jonathan S. Crow, and, as such, were entitled
to the benefit of the statutes of Nebraska in that
behalf enacted, and that this suit was instituted
for their benefit under the statutes.    It was also
admitted that the age and physical condition of
Jonathan S. Crow had been such, just before his

death, that, if plaintiff was at all entitled to recover, the verdict must be for $5,000.

As the defendant offered no evidence whatever, there is but little room for disagreement as to the ultimate facts which must determine this error proceeding. On March 3, 1892, Jonathan S. Crow & Son shipped three car loads of cattle from Ord to South Omaha. For the purpose of taking care of these cattle, Jonathan S. Crow was permitted to accompany his cattle, and, accordingly, there was issued to him a ticket by its terms good only for a continuous passage on the same train. On the back of this ticket were printed conditions required to be, and which were, signed by Mr. Crow, whereby he assumed all risk of accidents, and agreed that the Union Pacific system should not, under any circumstances, be liable for damage of any kind, whether to himself or to the stock which he was to accompany. Under the repeated decisions of this court, we cannot think that this stipulation of release should cut any figure in this case. (*St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb., 463; *Missouri P. R. Co. v. Vandeventer*, 26 Neb., 222.) There was shipped by the same train to South Omaha from Ord other car loads of stock, and these were accompanied by shippers who were neighbors and acquaintances of Mr. Crow. When the train reached Grand Island all these shippers left the caboose and sought to procure a lunch at what had formerly been a lunch stand near, or upon, the line of the Union Pacific railway. When, not being able to procure a lunch, these shippers sought their train, they found it had been placed in the freight yards of said Union Pacific railway, and that both the engine and the caboose had been therefrom de-

tached.  It was conclusively shown in evidence
that the only safe course open to them under the
circumstances was to keep very close to their stock,
so as to prevent any of the cattle from getting
down in the cars, as they were liable to do.   There
was no notice usually given when a train like theirs
would start, and often it happened that shippers
would be compelled to wait for hours near their
stock, or run the risk of being left whenever the
caboose should be attached.   It was testified by
different witnesses, and not denied, that if a ship-
per was not ready to board the caboose immedi-
ately after it was attached, he was in imminent
danger of being left, for the attaching of the ca-
boose to the train was the signal for its immediate
departure from Grand Island.

The testimony shows that the night of March 3,
1892, was dark and foggy at Grand Island; that
there was a drizzling rain, and that the electric and
other artificial lights had but little tendency
toward overcoming the prevailing darkness.   The
train in which were the cars of stock accompanied
by Mr. Crow and his friends was standing upon a
track running nearly east and west.   At a distance
of about eight feet north of this track there was a
parallel track, upon which was standing the way
car which had been brought from Ord and de-
tached from the cars which the stock shippers were
watching.   An engine backed along this track
from the west and shoved the way car upon a
switch.   To accomplish this it was necessary to
pass the stockmen, who were standing along
the north side of one of their cars of stock.
Across the rear of the tender of this engine
there was a foot-board, which projected over
the track about two feet, at a height of about

ten inches above the track traveled by the engine. The space between the cars which the stockmen were watching and the projecting end of.the foot-board nearest them was about five feet across. It is not certain there was a light on the rear end of the tender. If there was such a light, its elevation was so great, or the light itself was so dim, that it gave no warning of the movements of the engine which we are about to describe. After the engine had shoved the way car upon the switch eastward, it moved westward beyond where the waiting stockmen were standing. No witness was able to say just how far westward this engine had proceeded before it made a stop and began backing eastward. It is disclosed by the evidence of the surviving stockmen that they first discovered this engine when, in backing eastward, it was within from five to ten feet of them. After this engine had passed westward these stockmen paid no attention to it, and Mr. Crow shifted his position slightly, so that when the engine, without warning given by bell, whistle, or otherwise, backed toward the east he was struck, thrown down, and killed. From the facts which we have detailed it was clearly made to appear that Jonathan S. Crow was properly alongside the car wherein the stock of himself, or of his friends, was contained. The district court, in respect to his relation to the railroad company, gave the instruction numbered five requested by the plaintiff, which was as follows: "The jury are instructed that a drover or a stockman, traveling on a pass, such as was given to Jonathan S. Crow, deceased, in this case, for the purpose of taking care of his stock on the train, is a passenger for hire, and is entitled to the same rights and privileges as other passengers for hire,

riding on ordinary railway tickets." It seems to us that this instruction overstates the liability of railway companies in the class of cases contemplated. An owner of stock, who, for the purpose of taking care of such stock, receives free transportation, does so under such conditions as the duty of caring for his stock may require. If he is entitled to the same rights and privileges as ordinary passengers for hire, he could scarcely be expected to be satisfied to ride in an ordinary caboose. The duty of a railroad company to stop its trains at passenger depots for the purpose of receiving passengers, and of permitting of their alighting safely, would exist under the above rule, and there would be devolved upon the passenger the correlative obligation of remaining at such depot until his train should stop at that place. In such case it would be absolutely impossible for a stockman to pass alongside the cars containing his cattle, and having discovered such as had fallen or lain down, assist them to regain their feet. In the case under consideration the testimony showed, without question, that this was exactly the duty of Mr. Crow in respect to the cattle which he was accompanying to South Omaha. The fact that he was in the freight yard of the railroad company looking after his cattle, and waiting for the departure of the train, is inconsistent with the rule above laid down by the court; for, if this rule was a correct statement of the law which should be held applicable to the facts disclosed by the evidence, Mr. Crow should have awaited the departure of his train at the passenger depot; and it was evidence of negligence for him to venture into the freight yard to care for his stock, or to take passage on his train. The court should have instructed the jury

that, whether or not the deceased was negligent in waiting for the caboose where he did, and whether or not he was guilty of negligence in any respect while so waiting, was a question of fact to be, by the jury, determined upon consideration of all the evidence.

On the part of the railroad company there were requested numerous instructions defining what facts, or group of facts, would constitute contributory negligence, and what enumerated facts would not justify the inference of negligence, among which latter was the failure to ring the bell, or to sound a whistle, within the limits of the freight yard.    The refusal of the district court to follow this method of giving instructions has been by this court sanctioned in *Omaha Street R. Co. v. Craig*, 39 Neb., 601, and the Nebraska cases therein cited. Still later, the practice of instructing the jury that certain facts justify, or fail to justify, the inference of negligence has been disapproved in *Omaha & R. V. R. Co. v. Morgan*, 40 Neb., 604; *Chicago, B. & Q. R. Co. v. Oleson*, 40 Neb., 889; *Omaha & R. V. R. Co. v. Chollette*, 41 Neb., 578; *Pray v. Omaha Street R. Co.*, 44 Neb., 167; *Spears v. Chicago, B. & Q. R. Co.*, 43 Neb., 720.    The utmost extent to which the district court could properly go was to indicate what facts, if proved, might properly be taken into consideration in determining the presence or absence of negligence.    Whether or not the plaintiff's intestate was negligent in the performance of duties which the railroad company had acquiesced in his performing, was a question of fact which should have been submitted, as such, to the jury, in view of the evidence as to what such intestate, of necessity, was required to do, and how he was required to do it, in properly caring for his cattle.    In our

view it was not proper to attempt to confer upon Mr. Crow the unlimited rights and privileges of ordinary passengers for hire. While he was for certain purposes a passenger, he was not such in the usual unrestricted sense of that term. His contractual right was to proceed upon the freight train upon which his cattle were shipped from Ord to South Omaha. His duty was to care for his stock in transit, and his rights and privileges as a passenger were limited by the necessity of traveling on the aforesaid freight train, and by the requirement that he should care for his stock. For the reason that, in the instruction quoted, this limitation and requirement, with all their necessary incidents, were ignored, the judgment of the district court is

REVERSED.

HARRISON, J., not sitting.