OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY V. MARILLA L. CROW, ADMINISTRATRIX.

FILED APRIL 21, 1898. No. 9365.

1. **Death by Wrongful Act: PETITION.** A petition under Lord Campbell's Act, which alleges that the deceased left a widow and next of kin, describing them, on whom the law confers the right to be

supported by the person killed, sufficiently avers pecuniary loss, and in that respect states a cause of action.

2. **Railroad Companies:** Liability for Negligence of Connecting Carrier. A railroad company which issues a through ticket, and so contracts to carry a passenger beyond its own terminus, constitutes the connecting carrier its agent for the purpose of performing the contract, and is liable for the negligence of such connecting carrier.

3. ———: Duty to Shipper with Pass: Negligence. A·shipper of live stock, who receives from the railroad company undertaking the transportation of such stock a free pass, to enable him to care for his stock in transit, assumes such risks and inconveniences as necessarily attend upon caring for such stock, and, modified accordingly, the liability of the railroad company to such shipper for personal injuries by him sustained by reason of the negligence of its employés is that of a common carrier for hire.

4. ———: ———: ———. Such a shipper does not assume the risk of negligence by the carrier, but only such dangers as result from his peculiar duties while the railroad is being carefully operated.

5. ———: ———: ———: Fellow-Servants. By accepting such a pass the shipper does not become the servant of the railroad company, and is not within the fellow-servant rule.

6. **Negligence:** Pleading and Proof. A general averment of negligence is sufficient unless attacked by motion, and an issue framed by a traverse of such averment may be proved by evidence of any act within the general averment.

7. **Verdict for Plaintiff** in Action for Death by Wrongful Act: Instructions. Evidence *held* sufficient to sustain the verdict, and instructions found to have been correctly given and refused.

8. **Special Findings:** Discretion of Court. The submitting to the jury of special interrogatories is a matter resting in the discretion of the trial court.

Error from the district court of Valley county. Tried below before Kendall, J. *Affirmed.*

*W. R. Kelly* and *E. P. Smith*, for plaintiff in error.

*Reese & Gilkeson* and *Charles A. Munn, contra.*

Irvine, C.

This was an action by Marilla L. Crow, administratrix of the estate of Jonathan S. Crow, deceased, against the

Omaha & Republican Valley Railway Company, to re-
cover damages arising from the death of plaintiff's in-
testate alleged to have been caused by the negligence
of the defendant. From an adverse judgment the defend-
ant once before prosecuted error proceedings to this
court, and the judgment was reversed for error in the
instructions. (*Omaha & R. V. R. Co. v. Crow*, 47 Neb. 84.)
Another trial resulted in another verdict for the plain-
tiff, and from a judgment thereon the defendant again
prosecutes error. In the former opinion will be found
a statement of facts, substantially in accordance with
the facts elicited on the last trial. This time, however,
the defendant introduced evidence in some respects con-
tradicting or modifying the effect of plaintiff's evidence.
Thus the evidence now makes it quite certain that a
headlight was burning at the rear of the locomotive
which ran over Crow, but the fact remains that the light
therefrom emitted does not seem to have been sufficient
to attract the attention of any of the witnesses. More-
over, the admissions of facts with reference to the ca-
pacity of the plaintiff and the measure of damages were
not made at the last trial, and these were issues con-
tested by proof and submitted to the jury. There are 111
assignments of error, most of which are separately dis-
cussed in the very voluminous briefs. In several in-
stances a group of these assignments really presents a
single question of law. In a few instances the assignment
receives no support from the record; in others the ques-
tion presented is a subordinate question of fact, of no
general interest or importance, or the ruling complained
of, if erroneous, was clearly not prejudicial. In order
to avoid an unjustifiable expansion of the opinion it is
necessary to pass over many of these assignments with-
out special reference thereto. They have all, neverthe-
less, been considered.

At the beginning of the trial the defendant objected
to the introduction of any evidence, on the ground that
the petition did not state a cause of action. The over-

ruling of this objection is assigned as error. The specific objection made to the petition is that it does not show that the next of kin sustained any pecuniary injury from Crow's death. The petition alleges that Crow left a widow and several children, naming them and stating their ages. Six of them are minors. Since the filing of the briefs in this case the court has had occasion to investigate the question thus presented and to review the former decisions on the subject; and it has been held that when the petition discloses that the deceased left a widow, or next of kin, as minor children, in whose favor the law devolved upon him a legal obligation for their support, such facts are sufficient to raise a presumption of pecuniary loss because of his death, and it is not, in such case, necessary to plead any facts showing special damage. (*City of Friend v. Burleigh*, 53 Neb. 674.) It is true that it is not alleged in this petition, as it was in the case cited, that the deceased was of ability to perform that duty, but it will be presumed that a man will to the extent of his ability perform a duty of that character; it will be presumed that he has some ability to work; and the extent to which he does or can perform the duty is not a matter going to the sufficiency of the petition but to the proof of damages.

For several reasons it is urged that the evidence does not sustain the verdict, and the arguments under this head are of such a character that their discussion disposes of most of the assignments of error relating to the instructions and to rulings on the admission of evidence. We shall, therefore, ask counsel to accept what is said under this head, so far as applicable, as deciding these more special assignments, without always referring to them specifically.

It is said that the evidence conclusively shows that the injury occurred on the line of a connecting carrier, after the deceased had reached the terminus of defendant's road, and if it was caused by the negligence of any one, it was that of the servants of the connecting car-

rier. The evidence discloses on this subject that the defendant company was operating a line of railroad from Ord, where the deceased began his journey, to Grand Island, where it connected with the lines of the Union Pacific Railway Company. The two roads were owned by different companies, and, according to witnesses for the defendant, they were operated separately, with no relationship closer than an arrangement for the interchange of business. The ticket issued to Crow was headed "Union Pacific System and branches" and in no other way indicated by what corporation it was issued. The same was true of the written contract for the transportation of the live stock which Crow was accompanying. The ticket was for a continuous passage from Ord to South Omaha, and the contract was for the transportation of the stock to South Omaha. In no way was the contract restricted to the transportation of either passenger or cattle to the end of defendant's line. It was a through contract. Under the facts the case was essentially like that of *Chollette v. Omaha & R. V. R. Co.*, 26 Neb. 169, and *Omaha & R. V. R. Co. v. Chollette*, 41 Neb. 578, holding the initial carrier liable for the negligence of a connecting carrier through whose agency the contract for through transportation is being performed. In *Fremont, E. & M. V. R. Co. v. Waters,* 50 Neb. 592, cited by the defendant, the carrier had carefully restricted itself to agreeing to carry the goods to the end of its own line and there deliver to a connecting carrier named in the contract. There was no contract to carry the goods to their destination and no through consignment. That case is, therefore, in no sense applicable. The instruction on this point, bitterly assailed in the brief, is in accordance with the law as just stated, but includes the additional statement to the jury that if the deceased procured the ticket at the station of the defendant company, and if the contract was for carriage over the defendant's road and connecting lines, then the contract would be as binding on the defendant as if made in its

name. As the ticket was not issued in the name of the
defendant company, and especially as there was evidence
to show that "Union Pacific System" was merely a sort
of trade mark, to indicate a congeries of roads having
joint traffic arrangements, this part of the instruction
was eminently proper.

It is next argued that there was no evidence of neg-
ligence on the part either of the defendant or the con-
necting carrier, and that the evidence of contributory
negligence was conclusive. This presents also a question
argued more specifically with reference to certain in-
structions—that is, the measure of the defendant's duty.
On the former hearing it was held that one who is being
transported over a line of railroad on what has been
called a "shipper's ticket" is not a passenger in such
sense as to render applicable to him all the rules govern-
ing the transportation of passengers on passenger trains.
Such a person is charged with the care of his live stock
while in transit. He must ride on the train with the
animals. He must care for them en route, and in vari-
ous ways subject himself to perils not incident to ordi-
nary travel. To the extent that such requirements
interfere with the operation of ordinary rules of liability,
the duty of the carrier is accordingly modified, and no
further. (*Omaha & R. V. R. Co. v. Crow*, 47 Neb. 84; *Missouri
P. R. Co. v. Tietken*, 49 Neb. 130.) The statute fixing the
liability of carriers to ordinary passengers is, from the
nature of the case, not applicable; but, subject to the
different conditions reasonably arising from the special
arrangements and duties created by such a contract, the
common law as to carriers of passengers applies. The
carrier, subject to such modifications, is still bound to
the exercise of the highest degree of care of which human
foresight is capable; and contributory negligence is a
defense. The difference between such a case and the
ordinary one of a passenger affects also the latter ques-
tion. The duties imposed on the passenger, of riding on
a freight train and caring for his stock, excuse conduct

which would be grossly negligent on the part of a passenger on a passenger train. The evidence tends to show that no arrangements were made by the railroad company for notifying shippers when the trains were about to start. It was necessary, therefore, for the shippers to remain close to the trains while they were at rest; and this train was standing in a large railroad yard with many tracks therein, lying close together. The deceased, with three other shippers, was standing beside the rear car of their train, where the caboose was about to be attached, and which caboose they expected to board as soon as it should be attached. No other place was provided for them, and no other place was available without their incurring the danger of having the train leave before they could board it. The employés in the yard knew that such was the condition of affairs when stock trains were being made up, and they knew this particular train was being made up. The engineer testified that there were from four to fifteen stockmen alongside the trains every night. The yardmaster was aboard the switch engine which ran over Crow and actually saw these four men standing beside the track before the accident happened. The tracks were only eight feet apart. The stock cars extended at least twenty inches beyond the rail, and the foot-board on the tender which struck Crow extended still farther. This left very little space where men could stand with safety. The night was wet and dark. The engine, after pushing a way car upon a side-track east of where the men were standing, ran toward the west and a short distance beyond them. It then stopped and immediately backed to the eastward again, neither sounding the whistle nor ringing the bell before or while so doing. Negligence was pleaded generally, and that is sufficient unless the petition be attacked on that ground by motion. (*Omaha & R. V. R. Co. v. Wright*, 49 Neb. 456.) Therefore, instead of plaintiff's not being permitted to prove any negligence, as defendant argues, she was, on the contrary, entitled to

prove every act of negligence which would fall within the general averment. We think that in the manner of handling these trains and compelling the shippers to stand in the open yards, and in the backing of the engine without any warning, with knowledge that shippers customarily stood at that point, and with actual knowledge by the man in charge of the movements that these men were there, there is found ample to sustain the finding. It is said that there was no street crossing near and that there was, therefore, no duty imposed upon the railroad of ringing a bell or sounding a whistle; but the statute on that subject is not the only law. The bell and whistle are not designed solely for use at road crossings. It was a question of fact whether one or both of them should have been used as a warning under the circumstances of this case. It is also said that the engineer in quickly reversing his engine could not sound the whistle, and that the fireman was engaged in shoveling coal ånd could not ring the bell. But if such a signal was demanded by prudence, time should have been taken to give the signal. Again it is said that it is not customary to give a signal under such circumstances; but a custom to be negligent is no defense. An effort was made to show whether or not the engineer knew of an ordinance of the city of Grand Island forbidding the sounding of whistles in the railroad yards. Error is assigned on the exclusion of that evidence, but no offer of proof was made, and in any event the engineer's knowledge of such an ordinance would be immaterial. No effort was made to prove such an ordinance, and if one existed and was valid, it would not excuse the failure to give some other warning, as by ringing the bell. It is also argued that the proof shows that an engine in stopping and in starting, as did this one, makes several varieties of noise of its own accord and that such noise was a sufficient warning. But it must be remembered that there is no question here of ignorance by the deceased of the presence of the engine.

He knew it had just passed him. What it seems that he did not know was that immediately thereafter it had been reversed and was again approaching. It is not shown that he was sufficiently familiar with locomotives to learn that fact from the noises it emitted. No such technical knowledge can be presumed.

What has been said in a manner answers the arguments as to the conclusive character of the evidence of contributory negligence. Crow was where he had a right to be and where duty compelled him to be. The night was dark, and the headlight on the tender attracted the attention of no living witness. It evidently did not attract his. The space was narrow. He did not step upon the track, but only so near it that he was struck by the projecting foot-board. He had no warning of the engine's approach. It was for the jury to say whether or not his conduct was negligent. A finding either way might be sustained.

The defendant contends that the danger Crow incurred was a risk assumed by the special circumstances of his journey. But that risk extended only to those dangers incident to the requirements of his duties while being transported in such a manner, and while the railroad was being operated with due care. He did not assume the dangers arising from the negligence of defendant's employés. The argument on this point, that by the requirement that he should care for his own stock in transit he became a *quasi*-servant of the defendant and subject to the fellow-servant rule, is obviously unsound. The special contract, by its terms, exempted the railroad from liability for the negligence of its servants. It was held on the former hearing that the contract was, in that respect, contrary to public policy, and we are entirely satisfied with that conclusion.

Complaint is made of some of the instructions as to negligence and contributory negligence on the ground that they group certain facts and omit others essential to a proper consideration of the issues. This method

of charging the jury has been frequently criticised, and in the former opinion herein it was said that the utmost to be permitted in that line is to state what facts may be considered in determining the issue. Even then there is danger of omitting some essential consideration. Here, however, the danger was avoided by adding to the specified facts that all other facts in evidence throwing light on the issue should be regarded. There was nothing in the instructions on this point that can be deemed prejudicial to the defendant.

It was charged that the deceased was bound to the exercise of ordinary care, and that was defined as such care as "an ordinarily prudent and cautious person would have exercised under like circumstances." Complaint is made of this because of the use of an adverb instead of an adjective. It is said that the rule should have been stated with reference to the conduct of a "person of ordinary prudence;" that an "ordinarily prudent" man may at times be very negligent, and that the jury might have thought that this was such an occasion. We hardly think that the jury was composed of such purists. To the "ordinary mind," acting "ordinarily," the two phrases convey the same meaning.

The court refused to give forty instructions asked by the defendant. These stated many correct principles of law, but these were given in substance by the court of its own motion. They also stated other rules inconsistent with the doctrines we have just announced in dealing with the evidence. These were properly refused for that reason. Some stating correct principles were properly refused because of their exceedingly argumentative character, and their infringing upon the jury's right to determine the facts.

The defendant requested the court to submit to the jury fifty-five special interrogatories. It has often been held that the submitting of such interrogatories for a special verdict is in the discretion of the trial court. There was certainly no abuse of discretion in refusing this request.

For reasons stated at the commencement it is not practicable to discuss every assignment of error. The foregoing covers the more salient points of the argument. We find no prejudicial error in the record.

AFFIRMED.

HARRISON, C. J., not sitting.