## STANDARD OIL CO. v. PARKINSON.

(Circuit Court of Appeals, Eighth Circuit.   April 3, 1907.)

No. 2,461.

1. MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER—TEST.

The test of one's liability for the negligent act or omission of his alleged servant is his right and power to command and control his imputed agent in the performance of the causal act or omission at the very instant of its performance or neglect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1209, 1226.]

2. SAME—SCOPE OF EMPLOYMENT.

A master is liable for damages caused by the negligence of his servant within the scope and in the course of his employment, although he neither directs nor is aware of it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1226.]

3. SAME—ACTION—QUESTION FOR JURY.

One Perry was intrusted with the keys of the storage tanks of the Standard Oil Company at a town in Nebraska, drew oil and gasoline from them, hauled and delivered these articles to customers of the company in neighboring towns, sold them when he could at prices fixed by the company, collected the prices of the articles delivered and sold, and remitted their proceeds weekly to the company, which paid him monthly one cent a gallon of the articles thus delivered and sold. He used a wagon of the company and his own horses and selected his own routes and times to haul the oil and gasoline, and, as he was driving across a railroad track, an engine collided with the wagon and a serious injury resulted.

*Held*, there was substantial evidence that Perry was the agent of the company at the instant and in the act of driving upon the railroad crossing, so that the question whether he was an agent or an independent contractor was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1274.]

4. DEATH—ACTIONS—PRESUMPTIONS.

In Nebraska the legal presumption is, in an action under sections 2503, 2504, Comp. St. Neb. 1901, for damages for the death of a person by the wrongful act of another, that the widow and children of the deceased person were dependent upon him for support and maintenance, and that they sustained pecuniary injuries by his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 77.]

5. SAME—ADMISSIBILITY OF EVIDENCE.

The legal presumption of the dependence of the wife and minor children upon the husband and father during his lifetime for support is rebuttable, not conclusive, and evidence by a plaintiff in support of it before she knows whether or not the defendant will present evidence to overcome it is neither incompetent nor immaterial.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

William D. McHugh (Alfred D. Eddy, on the brief), for plaintiff in error.

Ed. P. Smith (John J. Sullivan and C. J. Smyth, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. On October 27, 1904, J. D. Perry drove his team, attached to a wagon of the Standard Oil Company loaded with oil and gasoline, upon a crossing of the Chicago, Burlington & Quincy Railroad Company, where an engine of that corporation driven by John C. Parkinson collided with it. The gasoline and oil took fire and burned the engineer so that he died. Rosa Parkinson, his widow and the administratrix of his estate, brought this action against the oil company for causal negligence. She averred that Perry was one of the company's servants, that he negligently drove his team upon the crossing and thereby brought about the death of the engineer. The oil company denied these allegations, and the jury returned a verdict for the administratrix. At the close of the evidence the court denied the motion of the defendant to return a verdict in its favor, and this ruling is assigned as error, upon the ground that there was no substantial evidence in the case that Perry was the agent or employé of the oil company in the act of driving his team upon the railroad track at the time of the accident.

The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect. There can be no recovery of a person for the act or omission of his alleged servant under the maxim, "respondeat superior," in the absence of the right and power in the former to command or direct the latter in the performance of the act or omission charged, because in such a case there is no superior to respond. Brady v. Chicago Great Western R. Co., 114 Fed. 100, 107, 52 C. C. A. 48, 55, 57 L. R. A. 712; Atwood v. Railway Co. (C. C.) 72 Fed. 447, 454, 455; Byrne v. Railroad Co., 9 C. C. A. 666, 61 Fed. 605, 608, 24 L. R. A. 693; Hilsdorf v. City of St. Louis, 45 Mo. 94, 98, 100 Am. Dec. 352; Town of Pawlet v. Rutland & W. R. Co., 28 Vt. 297, 300; Miller v. Railroad Co., 76 Iowa, 655, 659, 39 N. W. 188, 14 Am. St. Rep. 258; Wood, R. R. § 388; Donovan v. Construction Syndicate (1893) 1 Q. B. Div. 629; Rourke v. Colliery Co., 2 C. P. Div. 205. But a master is liable for damages caused by the negligence of his agent or servant within the scope and in the course of his employment, although he neither directs nor is aware of his acts. Philadelphia & Reading R. Co. v. Derby, 14 How. 468, 486, 14 L. Ed. 502; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 522, 10 Sup. Ct. 175, 33 L. Ed. 440. In the light of these rules of law, let us see whether or not there was any substantial evidence in this case that Perry was the agent of the oil company in the act of driving his team upon the track of the railroad company. There was testimony to the existence of these

facts: The oil company had storage tanks at Aurora, in the state of Nebraska, whence its oil was hauled by Perry's team to its customers in neighboring towns. The company owned the wagon and Perry the horses. The company fixed the prices of the oil and gasoline. Perry took them from the storage·tanks, hauled and delivered them to the customers of the company in neighboring towns, sold all that he could in lots of 50 gallons each to others, collected all the money for these deliveries and sales, remitted it to the company weekly, and once a month the company paid him one cent for each gallon so delivered and sold. He devoted the principal part of his time to this occupation. He was not engaged for any specific length of time, and he was free to abandon the work, and the oil company was at liberty to discharge him at any time. The company directed him to keep its customers in four towns supplied with oil and gasoline, but it did not direct him when or by what routes he should draw these articles to them. He went to the customers whenever they 'needed the oil or gasoline which he supplied. Some time after Perry entered upon his work the company directed him to deliver oil to its customers at another town, Phillips, and he did so. He was on his way to Phillips when the accident which caused this suit occurred. By means of the horses and wagon he kept the customers in the towns it specified supplied with oil and gasoline pursuant to its direction. But he determined when, how, and by what roads he would drive his team to each town and customer. Perry testified of the beginning and end of his occupation in this way :

"Anyway, about November, Mr. Fender came here and I talked over the matter with him and he decided to hire me, and so I went to work for them. * * *

"Q. When did you quit their employ? A. Along in the fall.

"Q. How did you come to quit at that time? A. How?

"Q. I mean did you quit voluntarily or did they discharge you? A. They discharged me."

The witnesses divided upon the question whether or not the contract between the oil company and Perry was in writing. If it was, the written agreement was not in evidence, and the facts which have been recited are deduced from oral testimony. If these facts show that Perry was an independent contractor, or that at the instant or in the act of driving his team upon the crossing he was without the control and direction of the oil company, the latter was not liable for his act and a peremptory instruction in its favor should have been given. The facts that the storage tanks, the gasoline, the oil, the wagon, and the customers were the oil company's, that the company delivered to Perry the keys and the care of the tanks, that he drew the oil and gasoline from them into the wagon, then hauled it with his team to the customers, sold to others when he could, collected the proceeds of the sales and·deliveries and remitted them to the company weekly, and was paid by the company one cent·a gallon on the articles delivered and sold, are consistent with the inference that in the performance of all these acts Perry was the agent of the company, and that his relation began with the hiring and ended with the discharge. It is true he might have been the servant of the company in the care, delivery, sale of, and collection for the oil and gasoline and his own master in the selection of the routes over which, and the times and manner in

which he would drive his team to deliver the goods. But the latter acts are ordinarily within the scope and course of the employment of an agent to sell and deliver goods and to collect and remit their proceeds, and if, in this case, they were separated from the sales, deliveries, and collection, persuasive evidence is requisite to establish that fact, because it is out of the ordinary course of commercial dealings. The fact that Perry's compensation was agreed to be paid and was paid in solido for all that he did, including his hauling of the oil and gasoline and his sales, deliveries, collections, and remittances, indicates that all these acts were bound together and performed in the same relation, and the evidence that they were either by agreement or in fact so separated that he was an independent contractor in the performance of the former and the agent of the company in his relation to the latter is not so conclusive or convincing that all reasonable men in the exercise of an honest and unprejudiced judgment would agree that at the instant and in the act of driving upon the railroad Perry was his own master or without the command and direction of the company, while in the care, sale, delivery, and collection of the price of the oil and gasoline he was its agent. It is indisputable that there was substantial and persuasive evidence that in the performance of the latter acts Perry was the agent of the company subject to its command and direction. The driving of the team was an act ordinarily within the scope and course of such an agency, and, in view of the fact that the hauling and driving were paid for together with the acts of care, sale, and delivery, the evidence in this case is not so conclusive that he was not the agent of the company and subject to its command in the hauling and in the driving upon the crossing that it was the duty of the court below to withdraw that issue from the jury and to so hold as a matter of law. Singer Mfg. Co. v. Rahn, 132 U. S. 518, 522, 10 Sup. Ct. 175, 33 L. Ed. 440; Waters v. Pioneer Fuel Co., 55 N. W. 52, 52 Minn. 474, 38 Am. St. Rep. 564.

This action was brought under sections 2503 and 2504 of the Compiled Statutes of Nebraska of 1901, which authorized the administratrix of the estate of one killed by the wrongful act of another to maintain an action for the death for the exclusive benefit of the widow and next of kin, and provide that the jury "may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of five thousand dollars." The next of kin in the case in hand were the minor children of the deceased. Counsel for the company complain that the court below permitted the widow to answer this question:

"Were you and your children dependent upon your husband for support and maintenance? A. Yes, sir."

They insist that this ruling was error, and cite the decisions of the Supreme Court of Nebraska which have adopted the rule that evidence of the value of the estate left by the deceased is inadmissible for the reason stated by Judge Cooley in Chicago & N. W. Ry. Co. v. Bayfield, 37 Mich. 205, 214, 215, in these words:

"**What** the family would lose by the death would be what it was accustomed **to receive** or had reasonable expectation of receiving in his lifetime; and to show that the family was poor has no tendency toward showing whether this was or was likely to be, large or small. One man contributes liberally in aid of his poor relatives, another delights in contributing luxuries where comforts are already abundant; but, when the contribution is cut off in either case, the extent of the loss is not measured by the wealth or poverty of the recipient, but by the contribution itself. A dollar lost, whether by poor man or rich man, is neither more nor less than a dollar, and a reasonable expectation of benefit to a certain amount must, when lost, be compensated to the same extent whether the loser be rich or poor." Chicago, R. I. & P. Ry. Co. v. Hambel, 89 N. W. 643, 644, 2 Neb. (Unof.) 607; Chicago, R. I. & P. Ry. Co. v. Holmes, 94 N. W. 1007, 68 Neb. 826.

But the evidence here introduced was not of the amount of the estate of the deceased, but of the dependency of the wife and children upon him in his lifetime for support and maintenance. The statute limited the recovery in this action to just compensation for the pecuniary injuries resulting to the beneficiaries of the statute from the death, and one of the objects of the introduction of this testimony was to prove that they suffered pecuniary injuries because they lost by the death of Parkinson their means of support and maintenance. If the beneficiaries of the statute in this action had been collateral heirs of the deceased or persons not legally dependent upon him in his lifetime, proof of their dependence upon him or of pecuniary injuries to them from his death would have been indispensable to a substantial recovery. Chicago, R. I. & P. Ry. Co. v. Young, 58 Neb. 678, 79 N. W. 556; Chicago, B. & Q. R. Co. v. Van Buskirk, 58 Neb. 252, 78 N. W. 514; Chicago, Burlington & Q. R. Co. v. Bond, 58 Neb. 385, 78 N. W. 710.

Proof of this nature is unnecessary when the beneficiaries are the widow and minor children of the deceased and where the prima facie legal presumption of their dependence is not overcome by countervailing evidence. But this is because they are legally dependent upon the husband and father during his lifetime, and the presumption of the law consequently is that they are pecuniarily injured by his death. Kearney Electric Co. v. Laughlin, 45 Neb. 390, 395, 63 N. W. 941; City of Friend v. Burleigh, 53 Neb. 674, 676, 74 N. W. 50; Omaha & Republican V. R. Co. v. Crow, 54 Neb. 747, 750, 74 N. W. 1066, 69 Am. St. Rep. 741. The presumption of legal dependence, however, is not a conclusive, but a rebuttal, presumption. The defendant had the right to meet and overcome it by evidence to the contrary, and, if it had done so, the resultant presumption of pecuniary injury from his death must have fallen. As the presumption was rebuttable and the plaintiff could not know before the defendant introduced its evidence whether or not it would present testimony to overcome it, her evidence in support of it was neither incompetent nor immaterial.

The judgment must be affirmed; and it is so ordered.