NASHVILLE, C. & ST. L. RY. *v.* J. J. HOPPER.

(*Nashville.* December Term, 1919.)

1. **CARRIERS.** Liable for loss of goods from defects in car procured for particular shipment.

A common carrier is liable for the loss of goods resulting from defects in a car belonging to another company and procured by the carrier for the particular shipment at the request of the shipper. (*Post, pp.* 204, 205.)

Case cited and approved: Railroad v. Dies, 91 Tenn., 177.

2. **CARRIERS.** Degrees of care required towards passengers and freight stated.

A carrier is not held to so high a degree of liability in the case of passengers as in the case of freight, but is ordinarily held to the highest degree of care in the transportation of passengers. (*Post, p.* 205.)

3. **CARRIERS:** No liability for injuries to shipper's empoyee through defective design of poultry car.

Where a produce company, shipping poultry ordered an L. P. T. poultry car for a shipment, and defendant raiiway furnished a new car of the type, without defect, except the alleged defect of design or contruction, that the grain bin underneath had too large a hole, the railway is not liable for injuries to the produce company's employee riding with the car, when his leg passed through the hole in the bin when the train was moving; he having assumed the risk. (*Post, pp.* 205, 206.)

4. **CARRIERS.** Passenger riding on caboose assumes added risks.

One riding on the caboose of a freight train though as a passenger, assumes the increased risk incident to such mode of travel, and cannot recover for injuries resulting in the absence of negligence of the railway. (*Post, p.* 206.)

Case cited and approved: Felton v. Horner, 97 Tenn., 579.

5. **CARRIERS.** Duty toward caretaker of livestock modified by incidents of employment.

The duty of a carrier to a caretaker accompanying live stock is modified by the fact that the requirements of a caretaker's employment expose him to certain perils not incident to ordinary travel. (*Post, pp.* 206, 207.)

Case cited and approved: Omaha & Republican Valley R. Co. v. Crow, 54 Neb., 747.

Case cited and distinguished: Western Md. R. Co. v. State, 95 Md., 637.

---

### FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. J. B. Dan'el, Special Judge.

Claude Waller, Fitzgerald, Hall and Frank Slemons, for plaintiff.

W. C. Cherry and McCarley & Stephenson, for defendant.

Mr. Justice Green delivered the opinion of the Court.

This is a suit for damages for personal injuries, in which there was a judgment for plaintiff below. The court of civil appeals reversed this judgment, and dismissed this suit, and the case comes before us on *certiorari.*

Hopper was an employee of the Columbia Produce Company, and was put in charge of a car of poultry

shipped from Columbia to New York. His duties required that he ride in the car and attend to the fowls on their way to market. This shipment was made in a poultry car of a standard pattern. In the center of such cars is a space called the stateroom, where the caretaker rides, about 8x9½ feet. Beneath the floor of the stateroom, and of about the same size, is a grain bin, where food for the fowls is stored. The grain bin has a trapdoor 32x40 inches, which forms a part of the floor of the stateroom. In the bottom of the grain bin, and immediately under the trap door, there is customarily a hole, which is found to be necessary in order to clean the cars. Refuse of various sorts accumulates ·in the grain bin during a journey, and is washed out through this hole.

The car in which the plaintiff rode was routed over the Nashville, Chattanooga & St. Louis Railway from Columbia to Chattanooga, and over the Southern Railway from Chattanooga to Washington, and over the Pennsylvania Railroad from Washington to New York. After passing Baltimore, and while on the line of the Pennsylvania Railroad, the plaintiff went into the grain bin for the purpose of getting a sack of food; he put one foot on the floor of the bin, and in the act of lifting out the sack his foot and leg slipped through the hole in the floor of this bin, striking the bed of the track below. The train was running at this time about 25 miles an hour, and the plaintiff sustained very serious injuries of a permanent character.

It is averred in the declaration that it was the duty of the Nashville, Chattanooga & St. Louis Railway to

furnish a vehicle for the transportation of this shipment that was reasonably suitable and safe, and that such duty extended to the protection of all persons necessarily using this vehicle anywhere in transit, and that this duty had been breached. It is further averred in another count that the Nashville, Chattanooga & St. Louis Railway furnished this vehicle for the carriage of the plaintiff, contemplating at the time that plaintiff was to be transported in said vehicle beyond its own lines, and that the plaintiff was a passenger of said railway company, even beyond its own lines, for whose injuries the railway was liable, since it had failed in the first instance to furnish a safe vehicle.

The particular defect charged to the car furnished was the large size of the hole (12 inches square) in the bottom of the grain bin, through which plaintiff's foot and leg slipped.

This car belonged to the Live Poultry Transportation Company. It was the custom of the railway company, during the shipping season, to keep a number of these cars in its yards. The shipper, in addition to freight charges, would pay a rental for the car, which was collected by the railway company for the company owning the car. There are two or three varieties of poultry cars in use in this country. Such cars as the one in this case, however, known as L. P. T. cars, are principally used in this section, and an L. P. T. car was furnished for this shipment by the railway company to the shipper at the particular request of the latter.

The plaintiff is an experienced poultry man. He made many trips with poultry cars prior to the one on which

he was injured. He says that he was familiar with the fact that there was a hole in the bottom of the grain bin on all such cars, but that the hole was usually made by taking out a section of a 3-inch plank, and was generally about 3 inches in width, and from 5 to 8 inches in length. He says that the largest hole of the sort that he ever saw was 4x4 inches. Other testimony introduced for plaintiff below tends to corroborate his statement that the vent hole in this grain bin was larger than usual.

Representatives of the Live Poultry Transportation Company testified that the car used in this shipment was of a new type, and that all of the new cars had a similar hole in the bottom of the grain bin.

All the parties seemed to agree that it was necessary that a hole of some size be placed in the bottom of the grain bin, and none of them ever knew of an accident of this sort before. After the accident there is testimony indicating that a plank was placed over the holes in cars of this series, prior to sending them out for loading.

The plaintiff was not present when this particular car was loaded. It was loaded by his employers at Columbia, and he joined the car at Decherd, while it was en route.

Under these circumstances, was the railway company liable to the plaintiff for the injuries sustained by him, even if the plaintiff be regarded as a passenger?

This court has held that a common carrier is liable for the loss of goods resulting from defects in a car, although the car belonged to another comapny and was

procured by the carrier for the particular shipment at the request of the shipper. *Railway* v. *Dies*, 91 Tenn., 177, 18 S. W., 266, 30 Am. St. Rep., 871.

The carrier is not held to so high a degree of liability in the case of passengers as in the case of freight. The carrier is, however, ordinarily held to the highest degree of care in the transportation of passengers.

. It is conceded by the railway company that its duty required this car to be inspected before it was furnished to the shipper, and that if it had failed in this duty, and a loss occurred, either to the poultry shipped, or to the caretaker, by a defect in the car which the company ought to have discovered, the company would be liable.

It is insisted, however, that there was no defect in this car for which the railway company can be charged, and we think this is correct. The hole in the bottom of the grain bin was placed there by the transportation company designedly. If, by reason of its size, it was a defect, it was a defect in design.

A carrier is not engaged in the poultry business primarily, and is not supposed to know the inside details and requirements of a chicken coop, even though the coop be on wheels. Having engaged to haul such a vehicle, the carrier is no doubt required to see that it is, generally speaking, a safe and suitable vehicle for the transportation of fowls therein loaded and their attendant. If such a car is old or worn, and a loss occurs for this reason, the carrier's liability follows. But in this case the plaintiff below and his employer, the produce company, were familiar with L. P. T. cars, and the latter ordered an L. P. T. car for this shipment.

The railway company furnished a new car of this type, without defect, except this alleged defect of construction in the grain bin. In the nature of its business the railway company would not know the most desirable dimensions for the vent hole of the grain bin of a poultry car, nor that a caretaker's duties would even require him to step into the grain bin. The accident here was without precedent, one which the railway company could not have anticipated, and we cannot see any negligence on its part. We do not think the railway company should be held for a defect of design in this car, latent to it, under the circumstances of this case.

One who rides on the caboose of a freight train, although as a passenger, assumes the increased risk incident to that mode of travel, and cannot recover for an injury so resulting, unless the carrier has been negligent. *Felton* v. *Horner*, 97 Tenn., 579, 37 S. W., 696.

So the duty of a carrier to a caretaker accompanying live stock is modified by the fact that the requirements of a caretaker exposes him to certain perils not incident to ordinary travel. *Omaha & Republican Valley R. Co.* v. *Crow*, 54 Neb., 747, 74 N. W., 1066, 69 Am. St. Rep., 741.

It has been said of a drover that: "He cannot claim that, because he is a passenger on a freight train, more care must be taken in inspecting the cars than would be necessary if he were not a passenger." *Western Md. R. Co.* v. *State*, 95 Md., 637, 53 Atl., 969.

See note, 31 L. R. A. (N. S.), 632, for other cases on the subject; Hutchinson on Carriers, section 1003.

The Columbia Produce Company loaded this car and put sacks of chicken feed in the grain bin. The hole was, of course, obvious when the bin was filled. Nevertheless the produce company, plaintiff's employer, accepted the car, and placed plaintiff upon it. The risk of injury from falling through this hole was one necessarily attendant upon plaintiff's work in the car which his employer had selected. We think, under the authorities cited, it was a risk he assumed, in so far as the carrier was concerned.

The judgment of the court of civil appeals will be affirmed.