STANDARD LIFE & ACCIDENT INSURANCE CO. V. BARBARA A. KOEN.

No. 1956.

**1. Pleading—Insurance Policy—Exhibit—Variance.**

Where, in a suit upon an insurance policy, the policy is made an exhibit to the petition, recitals of description in the policy become matter of averment in the petition, and a material variance does not arise because such descriptive and additional recitals are not fully averred in the pleading.

**2. Same—Manner of Averment.**

Where it appeared from the policy attached to the petition that the occupation in which the insured was engaged at the time the policy issued was stated in his application therefor, and such application was alleged to be in the hands of the defendant company, it was not necessary for the petition to allege the occupation of the insured at such time.

**3. Same.**

Where the petition alleged that the insured was killed by falling houses and flying timbers, produced by a cyclone, it was not necessary to aver that the injuries resulting in his death left physical marks upon his body.

**4. Same—Negativing Warranty—Defensive Matter.**

Nor was it necessary that the petition should negative the warranty in the application, providing that if the insured should be injured while engaged in any occupation more hazardous than the one therein stated, the compensation should be less, as such matter was defensive in its nature.

**5. Life Insurance—Waiver of Proof.**

Where the insurance company, upon being furnished with the preliminary proofs, refuses to pay upon a ground having no reference to the sufficiency of such proofs, as that the insured was engaged at the time of his death in an occupation more hazardous than the one in which he was insured, it thereby waives the right to object to any deficiency in such proofs.

**6. Same—Extra Conductor and Brakeman.**

The testimony of a witness experienced in the railway service, to the effect that an extra conductor, when not engaged in running trains, performs any

other service required of him, warranted a finding that an extra conductor could serve part of the time as a brakeman without losing his classification in the policy as an extra conductor.

APPEAL from Comanche. Tried below before Hon. T. H. CONNER.

*Oeland & Smith*, for appellant.—1. The petition misdescribed in a substantial and material respect the policy of insurance attached thereto as an exhibit, in that the petition alleged that the policy sued upon was for the term of fifty-two consecutive weeks, whereas the policy attached to the petition as an exhibit appeared to be a policy issued upon the consideration of certain warranties in the application therefor, and for the order of moneys in said application specified, the payments whereof were expressly stipulated to be premiums for separate and independent contracts for consecutive periods of two, three and five months, and each to apply to only its coresponding insurance period. Sayles' Texas Pleadings (new ed.), sec. 376, and authorities under note 5; Mims v. Mitchell, 1 Texas, 443, and authorities cited; 1 Greenleaf Ev., 58; 1 Starkie Ev., 332, 373, 374; Rule 19 for District Court.

2. Under the terms and conditions of the policy attached to the petition it was necessary for plaintiff to allege what occupation Wade A. Bledsoe was engaged in at the time of the issuance of the policy and at the time of his alleged death and to show by proper averments that he was not engaged in any occupation or exposure at the time of his death which was classed by defendant as more hazardous than that in which he was insured. Without such averments appellee failed to bring herself within the terms of the contract and showed no cause of action. Ins. Co. v. Troy Co-operative Assn., 77 Texas, 221; Shipman v. Fulcrod, 42 Texas, 248.

3. Under the terms of the policy the averment that the injuries complained of resulting in Bledsoe's death left visible mark or marks upon his body was indispensable in order to bring plaintiff within the terms of the policy. Ins. Co. v. Co-operative Assn., 77 Texas, 221; Rule 19, District Court.

*Lindsey & Goodson*, for appellee.

TARLTON, CHIEF JUSTICE.—This appeal is from a judgment in the sum of $2000 recovered by the appellee against the appellant upon a policy of accident insurance dated April 17, 1893.

His honor filed in substance the following conclusions of fact, which are adopted by this court:

1. On April 17, 1893, the defendant company, acting through its duly authorized agent, and for a valuable consideration accepted by it, issued and delivered to Wade A. Bledsoe, for the use and benefit of his mother, Mrs. Barbara A. Koen, the plaintiff, its policy of insurance. By this instrument it insured Wade A. Bledsoe against loss of time or death by external, violent and accidental means, and thereby agreed

to pay Barbara A. Koen, the plaintiff, the sum of $2000, in the event the death of Bledsoe should occur by the means stated.

2.   At the time of the issuance of the policy, Wade A. Bledsoe made written application therefor, in which, among other things, he classed himself as an extra conductor in the employ of the Texas Central Railway Co., and in which appear the following provisions, to-wit: "I under-stand the classifications of risks, and agree if I should engage in any occupation or work rated by the company as more hazardous than the class herein agreed to, that my insurance, weekly indemnity, or specific indemnity shall be limited to the sum which the premium paid by me will purchase at the rate fixed by the company for such increased hazard." The policy had the following provision on this point: "Or if death shall result from such injuries alone within ninety days, will pay the principal sum of $2000 to Mrs. Barbara A. Koen, except that if the insured is injured in any occupation or exposure classed by this com-pany as more hazardous than that stated in said application, the insur-ance, weekly indemnity, or specific indemnity shall be only for such sum as the premiums paid will purchase at the rate fixed by said company for such increased hazard."

3.   At the death and time of the making of said application and of the issuance of the policy, the fact was that Wade A. Bledsoe was an extra conductor on freight trains of the Texas Central Railway, and that part of the application of Bledsoe was true.

4.   By the rules of the defendant company, the occupation of a conductor was classed as XH (extra hazardous), and the occupation of a freight brakeman was classed as more hazardous than that of con-ductor.   The limit of insurance permitted in occupations classed XH, as conductor, was $2000, and the limit in the occupation of a frieght brakeman was $350, all of which was understood by Wade A. Bledsoe.

5.   An extra conductor, in railway parlance, means one who has so advanced in the line of promotion as to be entrusted and called upon to take out and run trains as conductor, when for any reason the regular conductor cannot do so, or where there is some special train for which there is no conductor, until a vacancy in the list of regular conductors occurs, when such extra conductor then becomes a regular conductor. Until the final promotion to the position of a regular conductor, an extra conductor may and does engage in any other service required by his company, such as braking on trains, shoveling coal, or in fact anything else in railway service required of him by his superiors; and it does not appear in evidence that there is any rule or custom by which an extra conductor loses his classification as such merely because for any given number of days or times he may be engaged in some railway service other than conducting trains, nor does it appear that the classifi-cation of extra conductor is dependent on the number of times per week or month that he is called upon to take out a train.

6.   The custom, rules and service of extra freight conductors, as above stated, were well known to the agents of the defendant company at the

time he received the application and issued the policy of insurance to Wade A. Bledsoe, and it inferentially appears that the general manager of the company must also have known the particulars of such classification, for the agent issuing the policy testified that, some time prior to the issuance thereof, he had some correspondence (just how much and what was not developed) with the general manager as to the classification of an extra conductor, and that the word "extra" had been put before "conductor" in order that the company might know that the applicant was not a regular conductor.

7. On April 28, 1893, Wade A. Bledsoe went west to Cisco on a freight train as a brakeman, arriving there in the evening, Cisco being the end of the trip as far as required of Bledsoe. Some time after his arrival, during the evening, and while in no way connected with or engaged in the occupation of a freight brakeman, or in any employment connected with the railway service, Bledsoe was by external, violent and accidental means instantly killed. The proof fails to show just how many trips between the 17th of April and the 28th of April, 1893, Wade A. Bledsoe made as freight brakeman or as an extra conductor.

Upon the foregoing conclusions of fact, his Honor founded the conclusion of law that "it does not sufficiently appear that Wade A. Bledsoe, within the meaning of the terms as explained, had lost his right to the classification as an extra conductor, or that he was not an extra conductor at the time of his death." Further, "that he was not killed or injured in any occupation or exposure more hazardous than that in which he was classed in the policy; in other words, it being true that Bledsoe was in fact an extra conductor at the time the policy was issued to him, he was not injured while engaged in more hazardous employment, whatever he may have been doing between the two dates."

*Conclusions of Law.*—Under assignments urging error on the part of the court in overruling a general demurrer to the petition and certain enumerated special exceptions, the appellant relies upon propositions which we dispose of as follows:

1. We do not hold with the appellant that there is any variance between the allegations of the plaintiff's petition and the terms set forth in the policy which is made an exhibit to the petition. Indeed, the recitals of the policy, from the fact that it was made an exhibit, become as to this question of description a matter of averment in the petition. The supposed variance consists in the fact that the petition alleges the term of insurance to be 52 consecutive weeks. The term thus described is indeed set out in the face of the policy itself, but this instrument additionally provided for separate and independent contracts for consecutive periods of two, two, three, and five months, aggregating 52 weeks. Reading the petition in the light of the recitals of the policy made a part of it, there was no such variance as complained of by the appellant.

2. After having alleged the date, the issuance and the description of the policy, with its number, and the fact that it was attached to the petition as an exhibit, the latter proceeded with the averment, "that the application for said policy is in the possession of the defendant, who is notified to produce it on the trial, or secondary evidence will be used." Further, "that on the 28th day of April, 1893, in the city of Cisco, Texas, the said Wade A. Bledsoe, while eating his supper at a restaurant, received injuries from falling houses and flying timbers, produced by a cyclone then raging, from which on said day he died." * * * Further, "that immediately after his death, full particulars as to how, when and where said accident happened, and the result of said accident, were given and caused to be given by plaintiff to defendant's agent, J. G. Bennett, at Dublin, Texas, and Ed Bohanan, DeLeon, Texas, and at its home office, with the full name and address of the plaintiff and said Bledsoe. Within less than two months from said death, plaintiff furnished and caused to be furnished to defendant company affirmative proof of said death, and all said proof was accepted by defendant company as being satisfactory." Further, "that on the ———— day of October, 1893, the defendant company, through H. O'Flynn, its agent duly authorized for said purpose by defendant company, by a letter written to plaintiff, and by a letter written to Lindsey & Goodson, plaintiff's attorneys, admitted its liability to plaintiff to pay to plaintiff the full amount of said policy as shown on the face of it, except that defendant claimed that the insured at time of death was injured and killed in an occupation and exposure more hazardous than the one stated in the application on which this policy was based, and that thereby defendant company was only liable to pay on said policy the sum of $350 (less $35 which defendant claimed was due it under the terms of said application and policy), which sum (less $35) defendant company offered to plaintiff." These "facts plaintiff now here pleads as a waiver on the part of defendant company to every other condition and requirement named for its benefit in said policy and application."

It appears from the policy attached to the petition that the occupation in which Bledsoe was engaged at the time of the issuance of the policy was stated in the application. It also appears that this application was in the possession of the defendant. Hence the defendant knew his occupation at the date of the issuance of the policy, if indeed it was material to aver it. The petition sufficiently stated the circumstances under which Bledsoe was killed. The proposition, therefore, that the petition was defective in failing to state in what occupation the insured was engaged at the time of the issuance of the policy and at the time of his death, is not approved by us.

3. The allegations already quoted rendered it unnecessary to aver that the injuries complained of resulting in Bledsoe's death left visible mark or marks upon his body, as indispensable in order to bring plaintiff within the terms of the policy. As it was charged in the petition that the application was in the possession of the defendant, it was not neces-

sary that it should aver what were the terms, conditions and warranties of the application. These were peculiarly within the knowledge of the defendant. The particular warranty in the application, a failure to allege a compliance with which is complained of, is that, "if the insured is injured in any occupation or exposure classed by this company as more hazardous than that stated in said application, the insurance, weekly indemnity, or specific indemnity shall be only for such sums as the premiums paid will purchase at the rate fixed by said company for such increased hazard."

We have seen that the petition averred the fact to be that the insured was killed by a cyclone while eating in a restaurant in the town of Cisco. Was it necessary, when the defendant was charged with the possession of the application, and hence with a knowledge of all of its conditions and warranties, that the petition should negative the applicability of the clause of warranty above quoted? We think not. Such matter was defensive in its nature. This the appellant seems to have thoroughly understood, because its answer sets up as a defense to this action, that the insured was injured in an occupation or exposure classed as more hazardous. To this, as the principal issue in the case, the course of the evidence, in accordance with the defendant's pleadings, was mainly if not entirely directed.

It has been held, by virtue, as we think, of much reason and great weight of authority, that where conditions are relied upon as exempting the insurer from risk, the existence of these conditions must be alleged and proven by the company. Burlington Ins. Co. v. Rivers, 28 S. W. Rep., 453, and authorities there cited. Be this as it may, we decline, under the condition of the pleadings in this case, to sustain the special exception relied upon in this connection by the appellant.

4. The general demurrer to the plaintiff's first supplemental petition was properly overruled. The allegations of the latter were in reply to the defendant's answer with reference to the question whether notice of death had been given and the preliminary proofs had been furnished. The averments of the supplemental petition are very full with reference to a compliance with the conditions regarding notice and proofs of death. They show that these were furnished to the company within the time and in the manner provided by the policy, and that they were satisfactory to the company. They further show that the insurer refused payment of the full amount stated in the policy, on the sole ground that the insured was injured in an occupation or exposure more hazardous than that in which he was insured. It is said in May on Insurance, sec. 468, that, "Where the insurers refuse to pay on special grounds, as that the contract was never completed, or that the insured had no interest, or any other grounds having no reference to the sufficiency or insufficiency of the preliminary proof, it is a waiver of their right to object to any deficiency in this particular."

5. Under the fifth assignment of error several propositions are relied upon with reference to the action of the court in admitting evidence

over the defendant's objections. The grounds for the exclusion of this evidence are substantially those asserted by the appellant with reference to the action of the court upon exceptions, all of which have been considered by us and held to be untenable.

6. The conclusion of fact complained of in the sixth assignment of error is supported by the evidence. Thus, the agent of the defendant, Bennett, testified: "I was in the railway service a number of years, and it is not necessary, in order that he retain his classification as an extra conductor, that he do nothing else, as before stated. When not actually engaged in running trains, he may perform any other service required, until again called on to take a train out."

7. The conclusion of fact complained of in the seventh assignment of error is also supported by the testimony of the same witness. He states that, "In railroad parlance, extra conductor means the position in which a man is called upon to act in the capacity of conductor, without having continuous employment as such conductor. An extra conductor is in the line of promotion, taking out trains as the occasions arise, and as soon as one of the regular conductors dies or resigns, the extra conductor is given a regular run. When he is not engaged as an extra conductor, he may shovel coal, brake, or he may possibly do any other work that he can get to do. The classification of a freight conductor under the rules of defendant is hazardous, and the limit of the death indemnity is $2000. I was in the railway service a number of years."

So, the further conclusion that it inferentially appears that the general manager of the company must also have known the particulars of such classification, is supported by the testimony of this witness, who testified in this connection: "I placed the word 'extra' before 'conductor' to call the attention of the company to the fact that one so designated was not a regular conductor, and prior to the application and policy in this case had had some correspondence with the general manager about this classification."

8. The conclusion complained of in the eighth assignment is also supported by the evidence. Thus, the witness James Cook testified: "Wade A. Bledsoe was killed by the falling of the building out of which he had just escaped," during a cyclone at Cisco.

9. With reference to the remaining assignments of error, it suffices to say that we are of opinion that the court was correct in concluding that the insured Bledsoe had not lost his classification as an extra conductor because while he was such a conductor he also engaged in work of a brakeman. It appears that the term "extra conductor" is more comprehensive than that of brakeman; that the former includes within the designation such persons as may be engaged as brakemen, whereas, the latter does not include the former; in other words, all extra conductors are in a certain sense brakemen, but all brakemen are not extra conductors.

Our opinion is that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Delivered October 25, 1895.