CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. DAVID C. TROYER.*

FILED NOVEMBER 5, 1903.     No. 12,853.

1. **Common Carrier: LIABILITY TO SHIPPERS OF LIVE STOCK.** A shipper of live stock who receives from the railroad company undertaking the transportation of such stock a free pass, to enable him to care for his stock in transit, assumes such risks and inconveniences as necessarily attend upon caring for such stock, and, modified accordingly, the liability of the railroad company to such shipper for personal injuries by him sustained by reason of the negligence of its employees is that of a common carrier for hire.

2. ———: **NEGLIGENCE.** The caboose of a stock train was left about thirty car-lengths from the station, and the defendant in error and other passengers were directed to leave the caboose and take another which would be attached to a train to be made up. To reach the station the passengers were required to walk the length of the train between the train and another track eight feet distant from the track on which their train stood. The distance between cars or engines, occupying these two adjacent tracks, was four feet. While walking along the track a switch engine passed defendant in error, going north, and about the time he reached the south end of the train the same engine, returning south, overtook and struck him. *Held,* That while the company might rightfully stop its caboose at the place it did, it was bound to furnish defendant in error a safe passage way to the station, and that no duty devolved on him to be watchful for any but apparent and known danger, and he would not be negligent in failing to do so, it being the duty of the company to refrain from any act which threatened him with a danger of which he was not given warning and time to guard against.

* Rehearing allowed. See opinion, p. 293, *post.*

ERROR to the district court for Hamilton county: BEN-JAMIN F. GOOD, JUDGE. *Affirmed.*

*J. W. Deweese* and *Frank Elmer Bishop,* for plaintiff in error.

*John A. Whitmore, Henry H. Wilson* and *Elmer W. Brown, contra.*

DUFFIE, C.

Troyer, the defendant in error, was injured in the freight yards of the plaintiff in error, at Lincoln, between 11 and 12 o'clock on the night of July 14, 1898. He left Aurora with a car-load of hogs on stock train No. 48, and, on its arrival at Lincoln, the train with the engine stopped at or near the O street viaduct and the rear end of the train some thirty car-lengths to the north thereof. It was the custom of the railroad company to make up another train at Lincoln, taking such stock as was destined for South Omaha into the newly made-up train, and the stockmen were required to leave the caboose of the Aurora train and walk between the tracks in the yard, along that train, to enter another caboose which would be attached to the train destined for South Omaha. On the arrival of the train in Lincoln defendant in error and other stock shippers in the caboose were told to leave it and make their way to the depot, awaiting the making up of another train. He left the caboose on the right hand side of the train and, together with other shippers and passengers who had occupied the caboose with him, made his way along the west side of his train until he had reached the south end thereof, from which the engine had, at that time, been detached. The tracks in the yard lay parallel with each other. The distance from the middle of one track to the middle of the other is 13 feet 2 inches, and between the west rail of one and the east rail of the other, 8 feet. The cars and engines project over these rails 2 feet on each side, leaving a distance of 4 feet between cars stand-

ing on adjacent tracks. On his way from the caboose to the south end of the train, defendant in error met a switch engine going north on the track next west. This engine had a headlight at each end, and we may assume that at that time, and afterwards at the time of his injury, the bell of the engine was ringing. One Green accompanied the defendant in error and was just in front of him. About the time they reached the south end of the train they had some conversation about going to the lunch counter for a lunch, and as the defendant turned to the left to cross the track on which his train stood, the switch engine, which but a few moments before had passed north, returned, and Troyer was struck by the drawbar of the engine on his left side and shoulder and thrown south some 35 or 40 feet between the rails of the track which he was about to cross. Defendant in error and Green both testified that they did not hear the approach of the engine or the ringing of the bell. The only defense made was contributory negligence on the part of the defendant in error. Judgment went in favor of defendant in error; and the railroad company has brought the record here for review.

The defendant in error was traveling on a drover's contract and pass usually issued to shippers of stock. The law is well settled in this state, following, we think, the weight of authority elsewhere, that a shipper who, for the purpose of enabling him to care for his stock in transit, receives a drover's pass is not, while accompanying his stock, entitled to all the rights and privileges of an ordinary passenger for hire; that he assumes such risks and inconveniences as necessarily attend upon caring for such stock; but that, so modified, the liability of the railroad company to such shipper, for personal injuries sustained by him from the negligence of the company or its employees, is that of a common carrier for hire. *Omaha & R. V. R. Co. v. Crow,* 47 Neb. 84, 54 Neb. 747; *Missouri P. R. Co. v. Tietken,* 49 Neb. 130.

In *Omaha & R. V. R. Co. v. Crow,* 54 Neb. 747, it is said:

22

"On the former hearing it was held that one who is being transported over a line of railroad on what has been called a 'shipper's ticket' is not a passenger in such sense as to render applicable to him all the rules governing the transportation of passengers on passenger trains. Such a person is charged with the care of his live stock while in transit. He must ride on the train with the animals. He must care for them en route, and in various ways subject himself to perils not incident to ordinary travel. To the extent that such requirements interfere with the operation of ordinary rules of liability, the duty of the carrier is accordingly modified, and no further. The statute fixing the liability of carriers to ordinary passengers is, from the nature of the case, not applicable; but, subject to the different conditions reasonably arising from the special arrangements and duties created by such a contract, the common law as to carriers of passengers applies. The carrier, subject to such modifications, is still bound to the exercise of the highest degree of care of which human foresight is capable; and contributory negligence is a defense. The difference between such a case and the ordinary one of a passenger affects also the latter question. The duties imposed on the passenger, of riding on a freight train and caring for his stock, excuse conduct which would be grossly negligent on the part of a passenger on a passenger train."

This rule, which has become the settled law of this state, disposes of the contention made by the plaintiff in error that Troyer assumed any risks not usually incident to travelers on freight trains and such as the care of his stock in transit demanded of him. Conceding to the plaintiff the right to stop the caboose at a great distance from the station and to require the shippers to walk between its tracks for a distance of 30 car-lengths for the purpose of changing cars to pursue their journey, it was its duty to furnish a safe path along which the shippers might walk, and to see that the path was not made dangerous by the operation of its train or engines. The shippers, on alight-

ing from the caboose and pursuing the directions given them by the employees, had a right to rest in the belief that the company would do nothing to endanger their progress. No duty rested on them to anticipate that the company would do any act to expose them to danger, and they were required to guard only against known and apparent peril.

In *Jewett v. Klein*, 27 N. J. Eq. 550, it is held that a person who, in passing from the depot to the train he was about to take, was obliged to cross an intervening track, was not guilty of contributory negligence in that he did not, before approaching the train, look up and down the track to see whether there was danger from an approaching train, and in that he approached the train diagonally from the platform to the station and before his train had come to a full stop. Referring to this case the supreme court of Colorado, in *Atchison, T. & S. F. R. Co. v. Shean*, 18 Colo. 368, 33 Pac. 108, said:

"By the foregoing and other well considered cases it is settled that a passenger on a railroad, while passing from the cars to the depot, is not required to exercise that degree of care in crossing the railroad track that is imposed upon other persons, and that he has the right to assume that the company will discharge its duty in making the way safe; and, relying on this assumption, may neglect precautions that are ordinarily imposed upon a person not holding that relation; and this distinction is to be taken into consideration in determining the propriety of his conduct."

In the case of *Pennsylvania R. Co. v. White*, 88 Pa. St. 327, it is said:

"It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so."

The fact that on turning to the left to cross the track where the train on which he arrived was standing, the

drawbar of the engine coming south on the track adjacent, and to the west, struck him on the left shoulder and the left side of his body, shows conclusively that he must, at the time, have been standing west of the center line between the two tracks and within 2 feet of the east rail of the track on which the engine was being operated. This can not of itself be taken as negligence, such as to present a recovery. With a clear space 4 feet only in which to walk, it is evident that the variation of more than 1 foot from the center of the path caused by a false step, or confusion caused by the operations going on in a yard where so much business is done, would throw him in position to be struck by a passing car or engine. Having placed him in the dangerous position, the company owed him a greater degree of vigilance than under ordinary circumstances. If Troyer had seen the approach of the engine and knew of his dangerous position, it would be his duty to use all reasonable care and diligence in avoiding the injury; but his testimony, and that of Green who accompanied him, is to the effect that they did not hear the approach of the engine, and, as before stated, they were under no obligations to be alert in watching for the approach of a train or engine which the company had no right to operate in such a manner as to endanger them, until they had reached the station and were out of the way of danger. To say that one is negligent in not looking for danger which he has no reason to suspect, and which he knows it is the duty of the company to prevent, is to cast upon him a burden which the law does not justify. In this case there could be no negligence on the part of the defendant in error unless he knew or was given notice of the approach of the engine. That he did not, has been established by the verdict of the jury upon evidence ample to sustain such finding. If he were an employee of the company, an entirely different rule would obtain, and the cases cited by the plaintiff in error would be applicable; but, being a passenger, he had every right to suppose that the company would use the utmost care in seeing that no danger overtook him on his way from the caboose to the station.

We discover no error in the record, and recommend the affirmance of the judgment.

POUND, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed May 17, 1905. *Former judgment of affirmance adhered to:*

1. **Common Carrier:** SHIPPER OF LIVE STOCK. A person traveling on a freight train on a stock shipper's pass or contract, for the purpose of attending to and caring for the live stock being shipped on such train, sustains the relation to the carrier of passenger but in a restricted and modified sense.

a. ———: LIABILITY. Such a person, while so traveling, assumes such risks and inconveniences as necessarily attend upon caring for such stock and such as are incident to the means and methods employed by the company in the operation of its freight trains, and, as thus modified, the liability of the railway company to such shipper for personal injuries by him sustained, by reason of the negligence of its employees, is that of a carrier for hire.

b. **Risks Assumed by Shippers.** A shipper thus traveling on a freight train carrying live stock does not assume the risk of negligence by the carrier, but only such dangers as result from his peculiar duties while the railroad is being carefully operated.

c. **Duty of Carrier.** In such a case, the duty devolves upon the carrier to exercise the highest degree of care, skill and diligence for the safety of the passenger practically consistent with the efficient use and operation of the mode of transportation adopted.

2. **Negligence:** QUESTION FOR JURY: FINDING: EVIDENCE. In an action for damages for negligence against a railway company for personal injury to a shipper of stock, riding in a freight train, by coming in collision with a moving switch engine in the yards of the defendant company, it is made to appear that the train on which the plaintiff was being carried came into the defendant's freight yards about midnight, and that he was required to change way-cars before proceeding farther on his journey. The way-car on which he had been riding was left about 30 car-lengths from the place where he was required to take another one. To reach the other way-car the plaintiff and other passengers were required to walk the length of the train between the track on

which it stood and another track 8 feet distant.  The distance
between cars or engines on these two adjacent tracks was 4
feet.  While walking along the train and toward its head, where
the other way-car was supposed to be, a switch engine passed
the plaintiff on the adjacent track, going in an opposite direction;
and about the time he reached the head of the train on his way
to the other way-car, the same switch engine returning and
moving in the same direction overtook and struck him, inflicting
an injury which is sought to be compensated in damages.  *Held*,
Under the evidence, that the question of the alleged negligence of
the company was a matter for the jury to determine under proper
instructions of the court, and that the evidence is sufficient to
warrant a finding that the defendant company was guilty of action-
able negligence which was the proximate cause of the injury
complained of.

3. Contributory Negligence: QUESTION FOR JURY.  *Held, also*, That the
question of contributory negligence was for the jury, and that,
under the facts and circumstances narrated in the opinion, it
can not be said, as a matter of law, that the plaintiff was guilty
of contributory negligence so as to preclude a recovery on the
cause of action stated in his petition.

4. Instruction: ERROR.  Error can not be successfully predicated on
the giving of an instruction which is similar, in substance, to
one requested by the party complaining and given by the court.

HOLCOMB, C. J.

Plaintiff below, defendant in error, recovered a judg-
ment against the defendant railroad company, plaintiff in
error, to secure a reversal of which the company prosecutes
this proceeding in error.  An opinion has heretofore been
handed down, in which the conclusion was reached that
the judgment rendered in the district court should be
affirmed, and it was accordingly so ordered.  *Ante*, p. 287.
The statement of facts found in that opinion are chal-
lenged, and we find it advisable, in order to avoid any
possible misconception of our position, to briefly restate
what we conceive to be the salient features of the case ma-
terial to an intelligent discussion of the questions proper
to be considered in disposing of the alleged errors relied
on to secure a reversal of the judgment below.  The plain-
tiff was a passenger on one of defendant's freight trains
carrying live stock, the destination of which was the South

Omaha market.  At the time of the accident resulting in the injury which is made the basis of plaintiff's right to a recovery, he was traveling on a stock shipper's pass or contract, which permitted the carrying of a person on the same train, to accompany and attend the stock, if necessary, while in transit.  In this instance, the plaintiff was shipping a car load of hogs from Aurora to South Omaha, and, under his contract was a passenger on the same train, it appearing, however, that little if any attention was required in looking after the stock that was being shipped by him.  When the train on which plaintiff was riding reached Lincoln, which was near the hour of midnight, the business of the company required a rearrangement of the train from that point on to Omaha, and it became necessary for the plaintiff to leave the caboose or way-car in which he was then riding and take another one to be attached to the train, as made up in the Lincoln yards, for its onward trip to South Omaha.  This transfer took place near the center of the freight yards of the defendant company and in the midst of a network of tracks composing the same.  The way-car on which the plaintiff rode was at the north end of the train as it came into the Lincoln yards, and the one to which he was required to transfer was on the south end of the train as it was being rearranged; and it thus became necessary for him to travel the length of the train, or about thirty car-lengths, and in a direction parallel with the tracks, in order to pass from the one way-car to the other.  While he and a companion were walking between the tracks and by the side of the train on which he had been riding, and just as he came to the southern end of it, and while in the act of turning across the track on which his train was standing, the locomotive having been detached, he was struck by a switch engine, on the adjoining track, moving in the same direction he was traveling, and which, while going north, had passed him on his way to the head of the train to find the other way-car.  The collision inflicted serious physical injury for which he brings this action, alleging negligence

on the part of the company. It is alleged in the petition, in substance, that when said train stopped in said yards, the conductor in charge of the same ordered the plaintiff and other passengers to get out of the way-car in which they were riding, and negligently compelled the plaintiff and the other passengers to go into and upon the yards of the defendant company; that it was dark in the yards and there was great traffic, and bustle, and moving of trains and cars upon the tracks; that neither the conductor nor any of the train men assisted, or offered to assist, the plaintiff to find the car upon which he was to complete the trip or to reach any place of safety in or near said yards, but, on the contrary, negligently left and abandoned the plaintiff and the other passengers in said yards, well knowing that such negligent abandonment placed the plaintiff and the other passengers in great danger from trains and engines on said track; that while the plaintiff with the other passengers were seeking their way out of the yards, the servants of the defendant company in charge of and operating a certain locomotive about the business of the defendant, and who were running the said engine along a track nearest to the track on which stood the train in which the plaintiff was a passenger, negligently ran its engine at a high and unnecessary rate of speed, and negligently ran upon and against the plaintiff, and negligently struck the plaintiff with said engine or some projecting part or appliance of the same and greatly and permanently injured the plaintiff. It appears that the distance between the tracks was approximately 8 feet and, with the overhanging of the cars, there is 4 feet of space between the cars or engines as they stood or moved along on two parallel adjacent tracks. It thus appears that a position, if maintained in the space thus existing between the cars on adjoining tracks, would leave a person unexposed to contact by the moving objects on either track, but, it is obvious, a slight deviation from the center line of this space between the tracks would render a person, standing or walking thereon, liable to be struck by a moving car or

engine being moved up and down the tracks between which such person stood or was walking. With this brief statement of the situation, we will endeavor to note the vital objections urged against the judgment obtained by the plaintiff in the court below.

1. The defendant company contends that its relation to the plaintiff is not that of carrier and passenger, but that the relation existing at the time of the injury was more nearly analogous to that of employer and employee. On the other hand, it is insisted by counsel for plaintiff that he was a passenger in the fullest sense of the word, and that the carrier must respond in damages under our passenger statute, for all injuries sustained except such as are occasioned by the criminal negligence of the passenger, or from his violation of some express rule or regulation of the company actually brought home to his notice. Compiled Statutes, ch. 72, art. 1, sec. 3 (Annotated Statutes, 10039). We are not disposed to accept either of the views thus advanced, as being a correct statement of the relations of the parties to each other, in the action at bar. At least, we do not find it necessary in this action to base the plaintiff's right of recovery upon the broad ground that he was a passenger in the fullest sense of the word, and entitled to the full protection given by statute to passengers within the meaning of the word, as therein used, while being transported by common carriers. The decisions of this and other courts recognize, we think, a well defined distinction between passengers transported in the ordinary way and those persons traveling, as was the plaintiff, on a freight train for some special purpose connected with the passage thus provided for. In *Omaha & R. V. R. Co. v. Crow,* 47 Neb. 84, it is held, by this court, that a shipper of stock, who for the purpose of enabling him to care for the stock in transit receives a drover's pass, is not, while accompanying his stock, entitled to all the rights and privileges of an ordinary passenger for hire, and that his contract of passage is under the implied conditions that he will submit to whatever inconveniences are necessarily

incident to his undertaking. In other words, as we understand the decision, it is that such a passenger traveling upon a freight train is subject to the inconveniences, the methods and appliances that are used and resorted to in the operation and movements of freight trains used in the prosecution of the business of traffic in freight commodities, which is the primary object of the operation and running of such trains. Such a person, say the court, is for certain purposes a passenger, but he is not such in the usually unrestricted sense of that term. His contractual right is to proceed on the freight train, upon which his stock is shipped, from the place of shipment to its destination. His duty is to care for his stock in transit, and his rights and privileges as a passenger are limited by the necessity of traveling on such freight train and by the requirement that he should care for his stock. In *Missouri P. R. Co. v. Tietken,* 49 Neb. 130, it is held that such a person, so riding on a freight train carring his stock, "assumes such risks and inconveniences as necessarily attend upon caring for such stock, and, modified accordingly, the liability of the railroad company to such shipper for personal injuries by him sustained, by reason of the negligence of its employees, is that of a common carrier for hire." The rule is restated in the case of *Omaha & R. V. R. Co. v. Crow,* upon its second appearance in this court, 54 Neb. 747. It is also decided, in the latter case, that such a shipper does not assume the risk of negligence by the carrier, but only such dangers as result from his peculiar duties, while the railroad is being carefully operated. Say the court:

"He (the passenger) must ride on the train with the animals. He must care for them en route, and in various ways subject himself to perils not incident to ordinary travel. To the extent that such requirements interfere with the operation of the ordinary rules of liability, the duty of the carrier is accordingly modified. * * * The statute fixing the liability of carriers to ordinary passengers is, from the nature of the case, not applicable; but

subject to the different conditions reasonably arising from the special arrangements and duties created by such a contract, the common law as to carriers of passengers applies. The carrier, subject to such modifications, is still bound to the exercise of the highest degree of care of which human foresight is capable; and contributory negligence is a defense."

It must, we think, be accepted as the settled doctrine of this jurisdiction that a person with right of passage on a freight train, for the purpose of attending to his stock being shipped by the railroad company on such train, sustains to the company the relation of passenger to carrier, but in a restricted and modified sense. He is required to perform the duties for which his passage is provided and, for such purposes, assumes the risks incident to their performance. In fixing the liability of the carrier, then, regard must be had to the means and methods employed by the company in the operation of its freight trains, in the accomplishment of the business for which primarily employed, and the risks and hazards inherent in and necessarily attendant on the carriage of passengers by this method.

"From the composition of such a train and the appliances necessarily used in its efficient operation, there can not, in the nature of things, be the same immunity from peril in traveling by freight train, as there is by passenger trains, but the same degree of care can be exercised in the operation of each. The result in respect of the safety of the passenger may be wholly different, because of the inherent hazards incident to the operation of one train and not to the other, and it is this hazard the passenger assumes in taking a freight train, and not hazard or peril arising from the negligence or want of proper care of those in charge of it. Ordinarily, carriers of passengers for hire, while not insurers of absolutely safe carriage, are held to the exercise of the highest degree of care, skill and diligence, practically consistent with the efficient use and operation of the mode of transportation adopted." *Chi-*

*cago & A. R. Co. v. Arnol,* 144 Ill. 261, 271. See also *Olds v. New York, N. H. & H. R. Co.,* 172 Mass. 73.

Judged by these tests, and measuring the duties and responsibilities of the parties to the present controversy, it is for us, next, to consider and determine the question of negligence of the defendant company for the injury complained of which is relied on as a basis of recovery by the plaintiff.

2. It is contended that the negligence of the plaintiff alone contributed to his injury, and that the evidence fails to show any negligence on the part of the defendant. Whether or not the defendant company is to be held liable because of its alleged negligence in respect of the injury complained of, is to be determined by the facts and circumstances surrounding and leading up to the act, as a result of which the plaintiff came in collision with the engine of the defendant, as above stated. As the situation then existed, it became necessary for the plaintiff to find his way from the way-car in which he had been riding to the other end of the train, a distance of about 30 car-lengths. The fact that the passengers on this train, of whom there were several, were compelled to change from one car to another, and from one part of the yard to another was, we are warranted in assuming, known to the servants of the defendant company who were operating the engines, moving cars and making up the trains that were then being arranged in its freight yards. They knew, and must have known, that such a change would lead to more or less confusion and doubt as to the proper and exact place to go, and the particular place where the car would be found in which to continue their journey. It was known that this change must be made by walking some distance between the tracks. There was no well defined roadway by which passengers could go from the one place to the other. The travel necessarily was along and between parallel tracks laid close together, many of which were occupied with moving cars and engines being changed about in the yards. More or less noise and confusion of a bewildering character

surrounded those transferring themselves from one car to the other. It can hardly be doubted that the same duty devolved upon the company to guard against injury to its passengers, while changing from one way-car to the other, that rested upon it at all times during the journey of the passenger. The passenger, as it occurs to us, had a right to rely on the belief that the company would, with reasonable prudence and caution, operate its trains and engines in such a way as not to unnecessarily endanger those who were, of right and at the company's direction, in a position to be injured by such engines and appliances. The plaintiff in passing, as he did, toward where he must take the other car, proceeded along the only practicable route that he might travel. He walked down by the side of the train on which he had ridden, till he had reached the point where he might reasonably expect to find the way-car on which he was to finish his journey, and in the neighborhood of which it was to be attached to the train as it was to proceed to its destination. Before he had left the position between the two tracks where he had been traveling, and while seemingly just in the act of turning to cross the track on which his train was standing, in so doing, it is obvious he deviated in a slight degree from the exact center of the path along which he had been traveling, so as to bring his body within the path of the moving engine on the adjoining track, where he was struck by it and injured. It is in evidence that he was thrown a considerable distance. He testifies that he heard nothing of bell, or whistle, or other warning sound. The engineer on the moving engine saw him a considerable distance in advance, about 100 feet, but, from the position he was then in, the engineer thought he would clear his body by about a foot. Was the engineer justified in taking such chances? Would the company be free from negligence, when no effort was made to bring the engine under perfect control so as to pass with safety the plaintiff and his companion who, by reason of the train on the other side of them, were compelled to occupy a more or less perilous position between the two

tracks? The defendant company owed to the plaintiff the duty of exercising the highest degree of care and caution for his personal safety consistent with the convenient and efficient operation of its engines and cars in its freight yard, in the proper prosecution of its business. Whether it had discharged this duty, under the circumstances, was for the determination of the jury, under the pleadings and the evidence in support thereof. All the attendant facts and circumstances, the time of night, whether the yards were dark or lighted, the distance necessarily traveled in going from one car to the other, the facilities and opportunities afforded for making the transfer, the location of the tracks with reference to each other, the movements of engines and cars thereon, and the precautions taken to avoid injury to those making such transfer, were all matters for the consideration of the jury, in determining the questions of negligence, under proper instructions of the court; and we are of the opinion that the evidence is sufficient to warrant a finding that the defendant company, through its servants, was, at the time under the circumstances shown in evidence, guilty of actionable negligence, and that such negligence was the proximate cause of the injury.

3. It is contended that the plaintiff was guilty of contributory negligence, which precludes any recovery on his part. This contention is based almost entirely on the proposition that he failed to use his senses of sight and hearing and thus allowed himself to be run down, as it were, by the moving engine on the adjoining track. It is contended that if further warning or knowledge was necessary, in order to induce him to be reasonably careful, that this was furnished when the engine which struck him passed him going to the north, as he was walking by the side of his train toward the south, and, to avoid which, he pressed closer to his standing train in order to be entirely out of danger from its passing. It is said that he, without looking backward, listening for or paying any attention to the running of this engine upon the adjoining

track, after he had observed it running to the north, proceeded on his way to the south, wholly heedless of its further movements on its return, when it ran onto him in the manner complained of.  It is also argued that he was negligent, not only in failing to listen and look for the engine and to observe its movements, but that, in stepping to one side of the centre of the path between the tracks where he was walking so as to come in the path of the projecting portions of the engine, his act was equivalent to stepping between the rails of the track with knowledge, which he is shown to have possessed, that this track was being used by passing engines and cars, used in and about the business of the company in its freight yard, where the injury occurred.  Whether or not the plaintiff is to be charged with contributory negligence precluding a recovery must, we think, be determined by the attending facts and surrounding circumstances, and the question of negligence on his part is peculiarly one of fact to be determined by the jury. Of course, the duty devolved on the plaintiff to proceed on his way from one car to the other with that degree of care and caution to avoid injury that would be exercised by a man of ordinary prudence and foresight under like circumstances.  The caution and prudence that he was required to display must be commensurate with the known dangers surrounding him, and of those which he had reasonable cause to believe to be impending.  He was reasonably familiar with the yards and had, prior to this occasion, changed way-cars in the same way he was then attempting to make the change.  The plaintiff, at the time of the injury complained of, was going from one way-car to the other, where he had lawful right to be and where he found himself in a place of danger, not only on the invitation but at the direction of the defendant company. Whether the plaintiff, in fact, exercised that degree of care and caution required of him was a question for the jury, under the evidence bearing on the subject.  It is apparent that he proceeded with all due caution between the tracks, and in a safe position, as he was traveling to the head of

the train on which he had been riding. His testimony warrants the inference that he was alert and observant of the movements around him, in order to avoid injury to himself. That he did not observe the return of the engine, as it was running to the south, and going as swiftly as the evidence warrants a jury in finding it was running, can not, we are satisfied, justify the conclusion that he was guilty of contributory negligence, as a matter of law. In respect of the question of his moving his body while standing or walking between the two tracks, so as to come within the path of the projecting parts of the engine, it is to be noted that but a slight deviation or swerving from a line marking the middle of the path between the tracks would bring the body of a person so as to come in contact with the overhanging portions of the cars or engines, as they were standing or moving on the adjoining tracks. A person in walking between the two tracks, or preparing to turn across one of them, would, at times, in all probability, and perhaps unconsciously, swerve his body from the true center line so as to come within the path of the overhanging parts of a car or engine moving on the adjacent track. Under such circumstances, we can not believe that negligence ought, as a matter of law, to be imputed to one who, while thus traveling, permitted himself to depart from the straight and narrow path in so slight a degree and, because of which, came in collision with a moving object on the track, the coming of which he was wholly unconscious of. It is to be borne in mind that the plaintiff, in finding his way from one way-car to the other, might reasonably assume that the defendant company would not expose him to any danger which, by the exercise of that degree of care and caution required of it to those in its charge as passengers, could be avoided. The plaintiff was required to exercise reasonable care but, at the same time, he could rely upon the faithful observance, by the employees of the defendant company, of such precautionary measures consistent with the proper prosecution of its business, as would secure to passengers a safe transfer from one car to

the other.   The principle underlying cases of this kind and the reasons for the rule are well stated in the case of *Terry v. Jewett*, 78 N. Y. 338, 344.   In discussing the doctrine of the relative duties, rights and responsibilities of carriers and passengers the court say:

"The rule is well settled that a traveler crossing a railroad track on a public highway is bound to use his eyes and ears to ascertain whether a train is approaching; but this rule has not been held in this state to apply to passengers who are crossing a track at a station to get on a train.   There is a difference between the care and caution demanded in crossing a railroad track on a highway and in crossing while at a depot of a railroad company to reach the cars.   No absolute rule can be laid down to govern the passenger in the latter case under all circumstances.   While a passenger has a right to pass from the depot to the train on which such passenger intends to travel, and the company should furnish reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care, prudence and caution in avoiding danger.   The degree of care and caution must be governed in all cases by the extent of the peril to be encountered and the circumstances attending the exposure."

At the request of the defendant, the jury were instructed that, if it found from the evidence that the railroad company had been negligent in some or all of the particulars alleged against it, and it also found that the plaintiff himself had been guilty of negligence which caused or helped to produce the injury, then, the law is, if both parties are found to be guilty of negligence, neither one could recover from the other for the injury caused by such negligence and that, in this action, the plaintiff could not recover from the railroad company.   The jury were also told that, in making the transfer from one car to the other, the plaintiff was bound to make careful use of his senses of sight and hearing, and to use all the care and caution of an ordinarily cautious and prudent person, under such circum-

23

stances, commensurate with the dangers of the situation, to protect and save himself from injury or accident, and especially to avoid collision with an engine or cars running on an adjacent track, and that, if the jury found that the plaintiff did not exercise such care and caution at or immediately before the time of the collision, then, he is not entitled to recover damages from the defendant company.

Negligence was properly defined, and these instructions, we think, fairly submitted to the jury the question of the alleged contributory negligence of the plaintiff, and the finding of the jury must, under well settled principles of remedial law, be regarded as conclusive.

4. Complaint is also made because of the submission to the jury, by an instruction, of an issue raised by the pleadings, of the alleged negligence of the defendant company in the manner of constructing its tracks in the freight yards where the accident happened. It is contended that the petition states no cause of action in this regard, and that the evidence did not justify the submission of such a question to the jury. In the absence of any attack on the pleading and in view of the theory upon which the parties tried the case, the pleadings must, we think, be held to have presented this issue. We are disposed to the view that, with no other issue of negligence, a verdict, under the record as presented, in favor of the plaintiff, could not be upheld. But the allegation respecting the construction of the tracks has only an incidental bearing upon the negligence charged. The defendant company tendered an issue on this question, and its evidence was elaborate on the proposition that the tracks in the yards were properly constructed. Competent evidence was introduced on both sides in order to maintain the issue. It was spoken of, in the instructions, in connection with the other alleged acts constituting the negligence charged. The defendant, we are satisfied, was in no wise prejudiced. In fact, instructions were given, at the request of the defendant, inviting a verdict from the jury upon all questions regarding the

negligence charged, and all allegations in respect thereof which were, in substance, the same as the one given by the court, of which complaint is made. The defendant can not, therefore, predicate error upon the giving of an instruction which is substantially the same as one given at its own request. The judgment rendered can not rightfully be disturbed, solely on the ground of the court's submitting to the jury in one of its instructions, in the way it was submitted, the question of the negligence of the defendant because of the manner of constructing its tracks in its freight yards, where the injury occurred.

Upon an examination of the whole record, we are of the opinion that no substantial error prejudicial to the rights of the defendant is found therein; that the evidence supports the finding of the jury; and that the judgment rendered thereon ought to be affirmed, which is accordingly ordered.

The judgment of affirmance is adhered to.

                                        REAFFIRMED.

BARNES, J., dissenting.

It is correctly stated, in the prevailing opinion, that a shipper of live stock who receives, from the railroad company undertaking the transportation of such stock, a free pass to enable him to care for his stock in transit, assumes such risks and inconveniences as necessarily attend upon that manner of travel and the caring for such stock; and, modified accordingly, the liability of the railroad company to such shipper, for personal injuries by him sustained by reason of the negligence of its employees, is that of a common carrier for hire. It follows, that the plaintiff's right to recover for the injuries complained of in this case, depend upon some actionable negligence on the part of the defendant company. As I read the record, no such negligence is shown. The space between the railroad tracks, where the plaintiff was walking, in order to reach the caboose, as explained in the majority opinion, was wide

enough for his safe passage, if he had exercised ordinary
care to avoid being struck by the defendant's passing
engine.    This fact was clearly established when it was
shown that the defendant's yard, including the tracks and
space in question, were constructed more than 25 years ago,
and from that time to this has been used by the public for
passage, the same as it was being used by the plaintiff at
the time of the accident, and by the employees of the rail-
way company to do their work in and about the yard, with-
out other accident or injury than the one now complained
of.    The plaintiff, it appears, was entirely familiar with
the situation, and such familiarity may have made him
careless and inattentive to his surroundings, when he in-
advertently stepped to one side, and thus suddenly put
himself in front of the approaching switch engine.    It
seems to me that the negligence which caused the injury
complained of, if any, was the plaintiff's negligence, and
therefore I am of opinion that our former judgment should
be vacated, and the judgment of the district court reversed.