ANNA ZANTOW, APPELLEE, v. OLD LINE ACCIDENT INSUR-
ANCE COMPANY, APPELLANT.

FILED JUNE 7, 1920.   No. 20513.

1. **Insurance: CHANGE OF OCCUPATION.** Where a person, classified for
insurance as a farmer, makes a trip accompanying stock in ship-
ment, which he has sold before shipment to another party, *held*,
that such trip does not constitute such a substitution of one oc-
cupation for another that it can be said that he has changed his
occupation from a farmer to a "shipper tending stock," within
the meaning of a clause in an insurance policy, providing reduced
benefits in case insured changes his occupation to a more hazardous
one.

2. ———: **INCREASED HAZARD.** When such person is killed in a wreck
during the shipment, but while he is riding in a caboose, where
other passengers are allowed to ride who have regularly paid their
fare, *held* that, at the time of accident, the insured, not being
engaged in any duties peculiarly pertaining to those of a tender
of stock, but being subjected to those hazards only which are
common to the other passengers in the car, was not performing
any, act or thing pertaining to the more hazardous occupation.

3. ———: **CONSTRUCTION OF POLICY.** Though punctuation marks may
be considered as an aid to the interpretation of an insurance policy,
they will not control nor change a meaning which may be plainly
gathered from the words and their arrangement.

4. ———: **"PASSENGER CAR."** When a caboose, attached to a train
carrying live stock, is used as an essential part of the freight
train, for the purpose of carrying the train crew and the care-
takers of live stock, *held* not to be a passenger car provided for
the exclusive use of passengers, though a few passengers, in the
strict sense of the term, have been permitted to ride upon it.

Opinion on motion for rehearing of case reported in
103 Neb. 685. *Former judgment of affirmance adhered
to.*

FLANSBURG, J.

On motion for a rehearing on an opinion and order
affirming the judgment of the trial court. *Zantow v.
Old Line Accident Ins. Co.*, 103 Neb. 685.

Plaintiff, who recovered a $1,000 judgment below, urges that, under the opinion as rendered in this court, she is entitled to a $3,000 judgment. Plaintiff's husband, the insured, was classified for insurance as a farmer. He was killed in a wreck while riding in a caboose on a freight train. Regular passengers, who had paid fare, were riding in this car at the time of the accident. Insured, however, held a stock shipper's pass as a cattle tender. The cattle which he was accompanying to market had, just previous to the shipment, been sold by him to another party. The insured, who had planned to take the trip, agreed to go as cattle tender, in order to have the benefit of the shipper's pass. It appears from the evidence that the occupation of being a "shipper tending in transit" is, by the classifications of the company on file with the state insurance board, classed as a more hazardous occupation than that of being a farmer.

Two questions arise: First, whether the benefits under this policy should be reduced from $1,000, the face of the policy, to $300, by reason of a clause in the policy providing that benefits should be so reduced in case insured should be injured after having changed his occupation to a more hazardous one, or while doing any act or thing pertaining to any such more hazardous occupation; or, second, whether the benefits should be increased to $3,000 under a provision of the policy that the benefits should be so increased in case the insured be injured "while riding as a passenger in the inclosed part of a railway passenger car or street car, or licensed steamboat, or licensed passenger elevator provided for the exclusive use of passengers, and due directly to the wrecking of such conveyance."

The provision in the policy, providing for reduced benefits in case the insured should change his occupation to a more hazardous one, it seems to us, does not apply, since such provisions as these only contemplate the actual substitution of one occupation for another, and not merely a temporary resort to other activities. It can-

not be said that the insured, a farmer, who, as incidental to his occupation, raised live stock for market, and would therefore at some time ship it to market, had, within the meaning of the clause just mentioned, changed his occupation from farmer to stock shipper by the one act of accompanying this stock in shipment, even though he had previously sold it to another. Temporary duties thus assumed should not be held to effect a change of occupation within a restricted and literal meaning of that clause. *Redmond v. United States Health & Accident Ins. Co.*, 96 Neb. 744; *Taylor v. Illinois Commercial Men's Ass'n*, 84 Neb. 799, 24 L. R. A. n. s. 1174, and note; *Wheeler v. Standard Accident Ins. Co.*, ante, p. 219; *Gotfredson v. German Commercial Accident Co.*, 218 Fed. 582, L. R. A. 1915D, 312, and note; 1 C. J. 439.

The policy, however, goes further, and provides that the benefits shall be reduced if insured is injured while doing any act or thing pertaining to any such more hazardous occupation. At the time the insured was killed, he was riding in the caboose, seated with other passengers, who had paid their fares and who had been accepted, strictly as passengers, upon that train. The act or thing which he was then doing, riding upon a seat in this car, did not peculiarly pertain to tending cattle in transit. The cattle tender's duties, from which the extra hazards arise, are in being compelled to alight at all times and places; in being about the cars; in going back and forth from the caboose to the cattle car in railroad yards where cars are moving and being switched; and in the actual handling and caring for the live animals, which are closely constrained and under excitement of shipment. It is the duties of the occupation, which cause an increased likelihood of accident, that this clause is obviously intended to guard against, and when the insured is injured, not from a risk growing out of those duties, but from a risk common to other persons not so employed, it cannot be said that he was in the

actual performance of an act peculiarly pertaining to an occupation creating an extra hazard, and that he should therefore lose the benefits of his insurance. The reasoning in the following cases is found somewhat analagous: *Price v. National Accident Society*, 37 Pa. Super. Ct. 299; *Standard Life & Accident Ins. Co. v. Koen*, 11 Tex. Civ. App. 273; 1 C. J. 439.

When a person undertakes to perform the several duties of a hazardous occupation, though his undertaking is but temporary and casual, and under such circumstances or for so brief a period as to show no actual substitution of that occupation for his own, all of his acts, during the period over which the performance of these duties is distributed, do not necessarily pertain strictly to the hazardous occupation, but very many acts which he performs are acts to which no special hazard is attached, are not peculiar to such more hazardous occupation, and are common to people generally in different walks of life. If these same acts were performed as independent acts, and injuries should result during their performance, no penalty would accrue in the nature of a reduction of the insurance benefits. Insured in this case could, without taking charge of live stock, have taken passage on the caboose, paid his fare, remained seated within the car, and have been in the performance of the very act which he was, in fact, performing when injured, and, if then injured, could, without question, have recovered the full amount of his insurance. If the identical act complained of, then, is an act which he could have performed without penalty, if done as an independent act, surely it cannot be said, merely because he was at that particular time in charge of cattle being shipped to market, that this same act is so related to the more hazardous occupation that it should bar recovery by the reduction of benefits.

It follows that the benefits under the policy are not required to be reduced by reason of the fact that the insured was riding in a car, as he was, with other pas-

sengers regularly received, though he was at the time accompanying live stock to market.

It then becomes necessary to determine whether insured was, at the time of the accident, riding as a pas-senger in the inclosed part of a railway passenger car, within the meaning of the policy, so as to entitle his beneficiary to the $3,000 benefit.

From a reading of the clause as an entirety, we are constrained to hold that the words, "provided for the exclusive use of passengers," were intended to apply to the several conveyances named, as well as to a licensed elevator. It is true that no comma was placed before the word "provided," and, were the punctuation looked to alone, this proviso might be limited to elevators only; but, as is said in *Holmes v. Phenix Ins. Co.,* 98 Fed. 240: "The Century Dictionary  tells us, what is common knowledge, that 'there is still much uncertainty and ar-bitrariness in punctuation.' It is always subordinate to the text, and is never allowed to control its meaning. The court will take the contract by its four corners, and determine its meaning from its language, and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly, without regard to the punctuation marks, or the want of them. The sense of a contract is gathered from its words and their rela-tion to each other, and, after that has been done, punc-tuation may be used to more readily point out the di-vision in the sentences and parts of sentences. But the words control the punctuation marks, and not the punc-tuation marks the words." See cases cited in 13 C. J. 535.

The very evident meaning and purpose of the clause referred to was to allow increased benefits, should in-jury occur while insured was riding as a passenger in those conveyances only which are exclusively used for passengers, and about which therefore the carrier or operator is required to throw all possible safeguards and protection to insure safe passage. The several con-

veyances named, we believe, were intended to be definitely described and limited, in kind, to those provided exclusively for passengers.

The caboose in this case cannot be said to have been used exclusively for passengers. Though it carried some passengers, and might therefore be said, in a limited sense, to have been a passenger car for that reason and to that extent, and though some particular passengers may have paid fare and may have been, unless riding under a special permit limiting the obligation of the railroad, entitled to hold the company to the same extent and liability as if they were passengers on any other railway passenger car or on a passenger train, still this car was nevertheless essentially a part of a train which was loaded with live stock, and, as a part of that train, was furnished for the purpose of carrying the train crew, their accessories, and the cattle tenders who accompanied stock and were riding under contracts, restricting the obligation of the company towards them as passengers.

Our court has held that a railroad company may limit its liability to passengers, riding in the caboose of a freight train, to the common-law liability, and is not liable in such case under the statute. *Chicago, B. & Q. R. Co. v. Mann*, 78 Neb. 541; *Chicago, B. & Q. R. Co. v. Troyer*, 70 Neb. 293.

Here the car was not used strictly as a passenger car, nor for the exclusive use of passengers, but as an essential part of the freight train, and for the use of the freight crew and cattle tenders. *Standard Accident Ins. Co. v. Hite*, 37 Okla. 305, 46 L. R. A. n. s. 986.

The car would therefore not be operated as a car used exclusively for passengers, but would be subjected to the jolting, jarring, switching, and other inconveniences necessarily attendant upon the operation of a freight train, and the character of its use would, in fact, directly affect and increase the risks and hazards of those passengers riding upon it.

The insured, moreover, was riding on a stock shipper's pass, and, under our decisions, was a passenger in a restricted and modified sense only (*Chicago, B. & Q. R. Co. v. Troyer, supra*); and it is our conclusion that he was not, when the accident occurred, "riding as a passenger in * * * a railway passenger car * * * provided for the exclusive use of passengers" within the meaning of that provision of the policy. It is our judgment that the conclusion reached in the former opinion is correct, and that the plaintiff is entitled to recover $1,000, and it is therefore ordered that the judgment and order taxing attorney's fees in the trial court be

AFFIRMED.

MORRISSEY, C. J., and ALDRICH, J., not sitting.